# *Ex parte* Mayor and Aldermen of Birmingham.

## *Petition for Mandamus.*

1. *Circuit court; when it has power to cause obstruction of street.* A circuit court or other court of record, sitting in a city wherein the street running by the side of the court house is paved with a substance, which, when used by vehicles or street cars, causes so much noise as to interfere with the proper administration of justice by said court, has the power to prevent travel by vehicles over that portion of said street adjacent to said court house during the hours said court is sitting; and an order issued by said court to prevent such use of said street is valid, and will not be annulled by *mandamus.*

This was an application for *mandamus* originally filed in the Supreme Court by the Mayor and Aldermen of Birmingham. After averring the existence of the petitioner as a municipal corporation, with powers granted to it to establish and designate streets and avenues and to pave, improve and care for said street, it was then averred in the petition that Third Avenue and 21st street were public highways regularly established by the city of Birmingham; that 21st Street was paved from 1st Avenue to 8th Avenue with vitrified brick, "which said pavement was laid in a s ientific and approved manner under plans commonly used for such purposes,' that along said 21st Street between 3d and 4th Avenues there were two street railway tracks; that along 21st street between 3d and 4th avenue and on the west side of.the street there were business houses, residences and a hotel or boarding house; that 21st street was used very generally by the citizens of Birmingham for travel and passage. with vehicles, horses and by street cars, and that 21st street between 3d and 4th avenues was in the midst of the.business portion of the city; that the court house of the county of Jefferson was situated at the

39c

north-east corner of the intersection of 21st street and 3d avenue; that one of the rooms in said court house was set apart and used for the holding of the circuit court of the Tenth Judicial Circuit, in which circuit Jefferson county is situated; that this court room was on the s'de of the court house nearest 21st street. It was then averred that after the paving of 21st street as above stated, to-wit, on June 2d, 1902, The Honorable A. A. Coleman, as Judge of the Tenth Judicial Circuit of Alabama, issued the following order to Andrew W. Burgin, sheriff of Jefferson county:

"State of Alabama, Jefferson County, Circuit Court.

"To Andrew W. Burgin, Sheriff of Jefferson County, Alabama:

"You are hereby ordered to furnish two extra bailiffs now needed by this court; you are further ordered to place one of said bailiffs at the junction of 3d avenue and 21st street on the north side of said avenue and place the other bailiff at the junction of 4th avenue and 31st street on the south side of said 4th avenue.

"The hours for holding this court are as follows: From half past nine A. M. to half past twelve P. M. and again from two P. M. to half past five P. M. You will instruct said bailiffs that while this court is in session as designated above, they must not allow the passage of horses or stock of any kind or vehicles of any kind along 21st street between said avenues, Third and Fourth; except the vehicles of the fire department when on duty, and the street car, provided said street car shall not exceed the rate of two miles an hour while passing between said avenues.

"You will put up at each of said crossings conspicuous notices to the public that no passage as aforesaid will be allowed on Twenty-first street between Third and Fourth avenues during the said hours when this court may be in session.

(Signed) A. A. Coleman, Judge Tenth Judicial Circuit."

It was then averred that about the hour of 2:30 P. M. on June 2, that said Andrew W. Burgin, sheriff of Jefferson county, in obedience to said order, caused two

bailiffs to be placed in said street, one at the intersection of 21st street with 3d avenue, and one at its intersection with 4th avenue; that said bailiffs stretched ropes across said street at the intersection of 3d avenue and in the middle of the ropes hung the following notices, in conspicuous characters, in full view of the public: "No passage from 9:30 A. M. to 12:30 P. M. and from 2 P. M. to 5:30 P. M." These notices were signed Andrew W. Burgin, sheriff of Jefferson county. That on June 6, 1902, the said A. A. Coleman, Judge of the Tenth Judicial Circuit, issued the following modification of his order: "Mr. Andrew W. Burgin, Sheriff. Sir:—The order heretofore made by me in respect to travel on Twenty-first street between Third avenue and Fourth avenue, is hereby modified so as to allow the passage of all vehicles going to and from any house or lot situated on either side of said street between said avenues, and you will govern yourself accordingly. Yours truly, (Signed) A. A. Coleman, Judge Tenth Judicial Circuit." It was then averred that the ropes were so maintained from day to day between the hours designated in said order, and the public was prevented by reason of the said order and obedience thereto by the sheriff from using 21st street between 3d and 4th avenues, and the street cars in traversing 21st street between 3d and 4th avenues, were required to maintain a rate of speed not exceeding two miles an hour. That by reason of these facts, 21st street between 3d and 4th avenues was practically obstructed and closed, and the public of the city of Birmingham was thereby caused great inconvenience and annoyance, that the obstruction caused and maintained by the order of said judge of said Judicial Circuit as above described, created and constituted a public nuisance, which it is the duty of the petitioner to abate; that unless the order of said judge is annulled and set aside, the use of said street between the hours designated will be obstructed and interfered with continuously for ten months, the time during which said circuit court is in session in the county of Jefferson. The petition then averred that there were other rooms in the court house further removed from the street, which could be utilized for hold-

ing said circuit court without great inconvenience or trouble to the court or the county officials. It was also averred in the petition that before issuing said order, the said circuit judge had requested the board of revenue and the sheriff of Jefferson county, respectively, to furnish him another room in the court house for holding said circuit court, and that the Board of Revenue and the sheriff had, respectively, declined to do so.

The prayer of the petition was as follows : "Your petitioner respectfully prays that a peremptory writ of mandamus issue from this Honorable court, directed to and commanding the said A. A. Coleman, as Judge of the Tenth Judicial Circuit of Alabama, to revoke and annul said order, or if petitioner is mistaken in this, that your Honor will grant to your petitioner such other and further, or other and further relief, as to your Honor may seem meet and proper, as in duty bound it will ever pray, etc."

The respondent, A. A. Coleman, as judge of the circuit court of Jefferson county, filed his answer, in which he admitted the establishment and maintenance of the obstruction on the streets referred to, the issuance of the order, the observance of said order by the sheriff, which resulted in obstructing and preventing the use of the street except as allowed by said order between the hours designated therein. The answer then avers in detail the facts showing the reasons which caused the issuance of said order, and why the maintenance of said order was necessary. The substance of these averments and the answer are sufficiently shown in the opinion. It was further averred in the answer that said court had the inherent power as a court of law and jurisdiction to issue said order, or any other order that was necessary to prevent interruptions, disturbances or hinderances during the proceedings of said court.

Upon the petition and answer the cause was submitted to the Supreme Court.

E. D. SMITH, for petitioner.—This court has held in numerous cases that the control of the streets, so far as obstructing the same is concerned, invested in the legis-

lature, denying the right to municipalities to license or erect obstructions therein or in any way to legalize the same.—*City of Mobile v. L. &N. R. R. Co.*, 124 Ala. 132; *State v. Mobile*, 5 Porter, 279; *Costello v. State*, 108 Ala. 45. Any obstruction of a public thoroughfare in a city being declared a public nuisance indictable by law.—Costello case (supra.) It is the duty of the city to abate any such nuisance.—*Mayor and Aldermen of Birmingham v. Tayloe*, 16 So. Rep. 576.

The question as to whether a thing is or is not a nuisance does not depend on the notions of people living in a community.—16 Am. & Eng. Ency. of Law, (1st ed.), 1000; *Owen v. Phillips*, 73 Ind. 284.

It does not appear that the city in paving this street was exercising its power in an unreasonable, unwarrantable or unlawful manner; on the contrary, it does appear that the pavement was laid in strict conformity with a *plan* adopted by the city, and in an approved and scientific manner. As illustrative of this principle it has been held that the plan of paving is a governmental power, over which courts have no control.—*Easton v. Meff*, 102 Penn. State. 474; 48 Am. Rep. 213; *Child v. Boston*, 4 Allen, 41; *Mills v. Brooklyn*, 32 N. Y. 489; *North Vernon v. Voelger*, 103 Indiana, 314.

JOHN P. TILLMAN and JAMES WEATHERLY, *contra.*—That the judge has both the inherent and statutory power to prevent of abate any interruption, disturbance or hindrance of the proceedings of his court can not be seriously questioned.—Code, § 2639, Sub-division 1; § 2638, Sub-division 2; *Belvin v. City of Richmond*, 1 L. R. A. 107; *New Orleans v. Bell*, 14 La. Ann, 214; 29 Am. Digest, 1666; 8 Am. & Eng. Ency. 28.

Whether the right and power of respondent to issue the order in this particular instance be conceded or not, if the power exists in the circuit judge to issue such an order in *some* case in order to protect his court, the manner in which and the circumstances under which the power shall be exercised involves a judgment or discretion, which can not be controlled by mandamus.—*Tay-*

[*Ex parte* Mayor and Aldermen of Birmingham.]

*lor v. Kolb*, 100 Ala. 606, 609. The very fact that the propriety of the order can not be ascertained except by evidence *aliunde*, and the exercise of judgment upon that evidence, conclusively resolves that the question is of a judicial character, not purely ministerial and hence that mandamus will not lie.—*Taylor v. Kolb, supra; Leigh v. State*, 69 Ala. 266; *State ex rel. v. Hamil*, 97 Ala. 107.

The question involved in this case can not be settled by mandamus.—*State ex rel. v. Hamil*, 97 Ala. 107; *Leigh v. State*, 69 Ala. 268. Although the party applying for mandamus has a clear legal right which has been violated, and it is conceded that his remedy is mandamus, the court will not interfere in a case involving in a collateral manner the right of parties who have no opportunity of defending their interest.—*Ex parte DuBose*, 54 Ala. 278; *Taylor v. Kolb, supra.*

The answer of respondent controverts the averments of the petition that another suitable room could be obtained in the court house building for the holding respondent's court. Neither the common law principle or the statutes governing the issuance of the writ of mandamus furnish any "authority whatever for going behind the answer or return, and, leaping over the matter of the return, entering upon the trial of a contested election. Such contest would be beyond the scope of mandamus as always understood and administered in this State, and is equally without the purview of a controverted return."—*Leigh case, supra*, 268; *State ex rel. v. Hail, supra; Taylor v. Kolb, supra.*

HARALSON, J.—The charter of Birmingham bestows on the mayor and aldermen power "To establish streets, avenues and alleys, and regulate and control the paving and curbing of streets and sidewalks, and the giving of the grade thereof."—Acts, 1882-3, p. 312. This statute does not prescribe the kind of paving to be put down in any instance, but leaves it discretionary with the mayor and aldermen as to the paving of any partic-

ular street and the material with which it shall be paved. This power is not absolute, but is one to be exercised for the public good, having regard to established conditions. The maxim *"sic utere tuo ut alienum non laedas,"* is applicable in such case.

It is shown by the petition, paragraph 5, "That prior to June 2, 1902, your petitioner [the mayor and aldermen], as authorized by its charter, caused said Twenty-first street, from First avenue to Eighth avenue, north, to be paved with vitrified brick, which said pavement was laid in a scientific and approved manner, under plans commonly used for such purposes, and that before said date in June, said Twenty-first street, as paved, between Third and Fourth avenues was open for, and was used by the public, as above described."

The answer admits the averments of this paragraph of the petition, "but says that said street had been paved with vitrified brick only a very short time prior to the issuance of respondent's order, on June 2d, 1902, to-wit, about 90 days, and that prior to the time the said street was paved with vitrified brick, it was not paved at all, but was laid with gravel or chert and earth, so that travel thereon, including the passage of heavy vehicles and street cars, was comparatively noiseless. This had been the condition of the street for a great many years prior to June 2d, 1902, in fact, since the building of the said court house in the year 1887; that said vitrified brick pavement, while laid in a scientific manner, is of such material, and necessarily so laid and constructed as to emit an extraordinary loud and roaring kind of noise during the passage of vehicles over the same, and even light vehicles, unless they have rubber tires, cause a rattling and roaring noise, which can be as plainly heard in respondent's court room as by a person standing on the sidewalk of said street; indeed, it can be truthfully said, that the noises made by vehicles and street cars in said street in front of said court room, are greater and more resounding inside of the court room than outside, the acoustic principles of said court room being such as that the noises coming from said street reverberate in the court room to a much greater extent than

in the air." The answer proceeds to state, in substance, that the noises created by the passage of vehicles and cars is so great as to create a combination of roaring and rattling noises, which fill the court room, drowning all other sounds, therein, which cannot be kept out by shutting all the doors and windows, as respondent often tried to do; that these noises are so great as to stop the proceedings of the court for much of its time, because what is being said by the court, attorneys and witnesses can not be heard; that before said pavement was laid petitioners were warned and notified that it would cause the very disturbance it has caused, and interfere with the business of the court, but in spite of such warning petitioners proceeded to lay the same.

If this case were decided upon the mere equities of the equality of rights, it would seem, that the court house having been established long before the street, the petitioners coming to exercise the power of paving conferred on them by their charter, should have done so in a manner not to so seriously interrupt and interfere with the due administration of public justice, such as is shown has been done. The street should have been paved in a manner and with materials, such as would not have caused the disturbance of the court complained of, and which the judge sought by his restraining order to prevent. Especially is this true, since it appears, that by paving with some other materials, the disturbance might have been largely avoided.

Aside from this view, however, it may be stated as a truism, that every court of record has inherent power, irrespective of statute, to make rules for the regulation and transaction of its business, not in conflict with the constitution and laws of the land (4 Am. & Eng. Ency. Law, 450); and that such courts endowed with this power, may punish all persons for contempt of their rules and orders, for disobedience of their process, or for disturbing them in their proceedings.—3 Am. & Eng. Ency. Law, 780. Furthermore, it is provided by statute in this State, that "Every court has power, to preserve and enforce order in its immediate presence, and as near

thereto as is necessary to prevent interruption, disturbance or hindrance to its proceedings."—Code, § 2639, subdiv. 1. This common law and statutory power of the court, well known to the petitioners at the time they laid the pavement, or caused the same to be laid, was a warning to them, that it should be laid in a manner not to hinder or prevent the due administration of justice at the place long theretofore ordained by law for it to be administered. A proper regard for the public interests should have so influenced them.

We are not without precedents for the action of the court in quelling these disturbances. The case of the *City of New Orleans v. Bell,* 14 La. Ann. 214, was one of a rule taken against the sheriff, Bell, to show cause why he should not be enjoined from placing a barricade in the street, ordered by the judge of the First District Court to be so placed, to prevent the disturbance of the proceedings of the court, while in session, by the passage of horses and vehicles. The Supreme Court, on appeal from the order denying injunction, held that the judges of the courts in New Orleans are vested with full power to regulate the police of their courts, and to prevent the disturbances to the administration of justice referred to. Again, in *Belvin v. City of Richmond,* 1 L. R. A. 807, it was held, that a judge of the Hustings court of the city of Richmond had authority to order ropes stretched across a street during the hours his court was sitting, to prevent travel in front of the court house, where the noise of passing vehicles was sufficient to obstruct the proper administration of justice therein. These decisions do not appear to have been based on statutes, and there is nothing in the statutes of this State, which makes them inapplicable here.

It is to be admitted that any unauthorized obstruction of a public highway, such as impedes its lawful use as such, is a public nuisance at common law, which the public have the right to abate. But that rule does not apply to this case. If during court hours, the unobstructed travel on Twenty-first street between Third and Fourth avenues, does in fact obstruct, interrupt or hinder the proceedings of said court, in the manner shown,

[Berry *et al.* v. Tennessee & Coosa Railroad Company.]

then the power of the court to abate such obstruction, hindrance or interruption to the administration of justice would seem both on principle and authority clearly to follow, and the order of the judge cannot be said to have been unauthorized.

This order, as amended, does not appear to have gone any further than was absolutely essential to abate the disturbance, and protect the court from interruption. It cannot be characterized as arbitrary or excessive.

We need not consider the question whether the court was under obligation to move into some other room in the court house occupied by other officers. It appears that this privilege was not open to it. Besides, the room it did occupy, was the one in ·the building long theretofore dedicated to its uses for holding court.

The question has been raised by the respondent, as to whether the remedy here invoked is the proper one in such a case. We may forego its decision, however, since having no wrongs to avenge, the consideration of the petitioner's remedy is unnecessary.

The prayer for *mandamus* is denied, and the petition therefor is dismissed.

*Mandamus* denied, and petition dismissed.