The appellant was convicted and sentenced to six months' hard labor for Morgan County for violating § 13-6-226, Code of Ala. 1975, which is as follows:
 "Every person who enters into a combination with another to resist the execution of any legal process or other mandate of a court of competent jurisdiction, under circumstances not amounting to a riot, shall be guilty of a misdemeanor."
Following a series of demonstrations around the Morgan County Courthouse, Circuit Judge R.L. Hundley, during the jury term of the circuit court, signed and issued an order, which in pertinent part states:
 "It appears to the Court that certain persons and loiterers have congregated in the vicinity of the Court. These persons constitute a source of interference, and disturbance to the Courts, to the jurors, witnesses and parties, as well as the general public. The following shall be done to insure order.
"FIAT
 "Persons who fail to show the officers securing the building that they have specific business with the circuit courts or offices located in the building shall not be allowed in. The press shall have free access to the courtrooms and all public areas to the courthouse and its curtilage without restraint of any kind. No cameras shall be allowed in any part of the courthouse or its curtilage.
 "The Sheriff shall strictly enforce all the provisions of this order.
 "The restrictions shall not apply beyond the present jury term of court.
"This the 26th day of June, 1978."
Deputy Sheriff Bradley C. Cook testified that on June 26 he received a copy of the above order from Judge Hundley, and copies of the order were posted on all outside doors leading into the courthouse. On that same date the appellant came to the courthouse, and Deputy Cook served a copy on him. The appellant returned to the courthouse the next day and was asked by deputies to state his business. He stated that he needed to go to the registrar's office and also to talk with the sheriff. The deputies then admitted him to the building.
On June 28 the appellant again returned to the courthouse, and the incident in question arose. Around 1:00 p.m. on that date, Deputy Cook observed a small white foreign car with four passengers drive up to the front of the courthouse. June Ford, Larry Kirk, and the appellant got out of the car. The two men emptied their pockets and gave their personal effects to the driver. Ford, Kirk, and the appellant then approached deputies guarding the courthouse doors. Deputy Cook asked the group to state their business in the courthouse, and they refused. The appellant stated that he was a citizen of the United States and a temporary resident of Morgan County and had personal business in the courthouse. He said he did not have to state a specific reason and the constitution did not require it. Appellant continued to refuse to state his business in the courthouse and refused to leave saying that "he wasn't backing off" and if he was violating any law for Deputy Cook to arrest him. Cook complied and placed him under arrest. *Page 871 
 I
Appellant contends the instant statute was applied to him in an unconstitutional manner, denying him his first amendment rights. We disagree.
The evidence clearly shows that the appellant and his two companions came to the courthouse for the purpose of disobeying the order of the circuit court. Appellant had received a copy of the court order on June 26. He had obtained admission to the courthouse on June 27 by merely stating the nature of his business there in compliance with the order. However, it is obvious from the evidence that the appellant and his companions, acting in concert, came to the courthouse on June 28 with the intention and expectation of being arrested.
A reasonable inference from the evidence is that appellant and his male companion would not have emptied their pockets and given their personal effects to the driver of the car had they not expected to be processed into the county jail shortly thereafter. The evidence indicates that appellant and his companions did not come to the courthouse to exercise their freedom of speech or of assembly, but rather to seek a confrontation and to challenge the court order by a flagrant defiance of it rather than by petitioning the court for a modification or dissolution of the order.
In Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824,18 L.Ed.2d 1210 (1967), the Jefferson Circuit Court had issued an injunction restraining the petitioners from participating in or encouraging mass street parades without obtaining a city parade permit. The Supreme Court held that, although questions could be raised as to the generality of the parade ordinance and the vagueness of the injunction, the petitioners were nevertheless properly convicted of contempt because they did not attempt to have the injunction dissolved or modified, but instead deliberately violated it with the expectation of going to jail. The Court stated, at page 317, 87 S.Ct. at page 1830:
 "The breadth and vagueness of the injunction itself would also unquestionably be subject to substantial constitutional question. But the way to raise that question was to apply to the Alabama courts to have the injunction modified or dissolved. The injunction in all events clearly prohibited mass parading without a permit, and the evidence shows that the petitioners fully understood that prohibition when they violated it."
In the case of Adderley v. Florida, 385 U.S. 39,87 S.Ct. 242, 17 L.Ed.2d 149 (1966), a group of demonstrators were arrested for refusal to leave the grounds of Leon County Jail after being ordered to do so by the jailer. The Supreme Court in that case affirmed their conviction under Florida's trespass with malicious intent statute. The Court stated, at page 47, 87 S.Ct. at page 247:
 "Nothing in the Constitution of the United States prevents Florida from evenhanded enforcement of its general trespass statute against those refusing to obey the sheriff's order to remove themselves from what amounted to the curtilage of the jailhouse. The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated. For this reason there is no merit to the petitioners' argument that they had a constitutional right to stay on the property, over the jail custodian's objections, because this `area chosen for the peaceful civil rights demonstration was not only "reasonable" but also particularly appropriate * * *.' Such an argument has as its major unarticulated premise the assumption that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please. That concept of constitutional law was vigorously and forthrightly rejected in two of the cases petitioners rely on. . . . We reject it again. The United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose." (Citations omitted.) *Page 872 
Even the dissenting opinion of Mr. Justice Douglas, in which Chief Justice Warren and Justices Brennan and Fortas concurred, stated:
 "There may be some public places which are so clearly committed to other purposes that their use for the airing of grievances is anomalous. There may be some instances in which assemblies and petitions for redress of grievances are not consistent with other necessary purposes of public property. A noisy meeting may be out of keeping with the serenity of the statehouse or the quiet of the courthouse. . . ."
In Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476,13 L.Ed.2d 487 (1965), the Supreme Court stated:
 "There can be no question that a State has a legitimate interest in protecting its judicial system from the pressures which picketing near a courthouse might create. Since we are committed to a government of laws and not of men, it is of utmost importance that the administration of justice be absolutely fair and orderly. This Court has recognized that the unhindered and untrammeled functioning of our courts is part of the very foundation of our constitutional democracy. See Wood v. Georgia, 370 U.S. 375, 383, 82 S.Ct. 1364, 1369, 8 L.Ed.2d 569. . . . A State may adopt safeguards necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence. A narrowly drawn statute such as the one under review is obviously a safeguard both necessary and appropriate to vindicate the State's interest in assuring justice under law."
The Court stated further in Cox, at page 574, 85 S.Ct. at page 486:
 "We also reaffirm the repeated decisions of this Court that there is no place for violence in a democratic society dedicated to liberty under law, and that the right of peaceful protest does not mean that everyone with opinions or beliefs to express may do so at any time and at any place. There is a proper time and place for even the most peaceful protest and a plain duty and responsibility on the part of all citizens to obey all valid laws and regulations. . . ."
In the case of Thomas v. City of Eufaula, 44 Ala. App. 643,218 So.2d 813 (1968), cert. denied, 283 Ala. 719, 218 So.2d 817
(1969), the defendant and others held a demonstration or protest on the steps of the county courthouse which disrupted business within the courthouse. After repeated warnings and requests by the mayor to disperse, and on refusal to do so, the group was arrested. They were charged with willfully remaining at an unlawful assembly after being warned to disperse by a magistrate pursuant to Title 14, § 412, Code of Ala. 1940.
This court affirmed the convictions and held the proceedings under Title 14, § 412, supra, did not deprive the defendants of the constitutional rights of free speech, assembly, petition for redress of grievances or due process of law. The code section there was held not to be vague and overbroad on its face and was, therefore, a valid criminal statute. The holding in that case rested primarily upon Adderley and Cox, supra.
We likewise find in the instant case that § 13-6-226, Code of Ala. 1975, is not vague or overbroad on its face. In clear terms it prohibits a combination to resist execution of any legal process or the execution of any legal mandate of a court of competent jurisdiction. Circuit courts have the power to abate obstructions, hindrances, or interruptions to the administration of justice. Such authority extends even to the closing of streets in the vicinity of a courthouse to traffic which disturbs or disrupts the trial of cases. Ex parte Mayorand Aldermen of Birmingham, 134 Ala. 609, 33 So. 13 (1902).
Likewise, § 12-1-7, Code of Ala. 1975, provides:
"Every court shall have power:
 "(1) To preserve and enforce order in its immediate presence and as near thereto as is necessary to prevent interruption, disturbance or hindrance to its proceedings; . . ." *Page 873 
The authority of the circuit court to issue the instant mandate or order is therefore well established by common law and by statute.
 II
The appellant contends that no "solicitor's complaint" appears in the record and, therefore, no jurisdiction was conferred upon the circuit court to try the instant case denovo on appeal from the district court.
The instant record contains a copy of the original complaint upon which charges were initiated in the district court. That complaint was sworn to by Deputy Sheriff Bradley C. Cook before a magistrate of the district court. Section 12-22-113, Code of Ala. 1975, requires the filing of a complaint by the district attorney (formerly solicitor's complaint) on such appeals to the circuit court. No district attorney's complaint is in the record.
The requirement of filing a district attorney's complaint pursuant to § 12-22-113, supra, has been held to be mandatory. The absence of such a complaint signed by the district attorney or deputy district attorney mandates a reversal of the circuit court's judgment unless there has been a waiver on the part of the appellant. Campbell v. State, 42 Ala. App. 33, 151 So.2d 407
(1963); Bonds v. State, 28 Ala. App. 194, 180 So. 735 (1938).
In Taylor v. City of Decatur, 40 Ala. App. 571, 117 So.2d 786
(1959), the defendant was deemed to have waived the filing of the solicitor's complaint where he did not demand one and where he filed a demurrer in circuit court to the original complaint sent up from the inferior court. Likewise, in the instant case, we find no demand by appellant that the circuit court proceed on a district attorney's complaint and likewise we find that appellant filed a demurrer in circuit court to the original complaint sent up from the district court.
The issue of the failure of the district attorney to comply with Code § 12-22-113 was raised for the first time in appellant's brief which was untimely filed with this court on appeal. No error results.
AFFIRMED.
All the Judges concur.