This petition for a writ of mandamus arises from the refusal of an attorney, Thomas Rountree, to appear in the Circuit Court of Chambers County to answer a charge of contempt. The attorney petitioned the Court of Civil Appeals for a writ of prohibition, challenging the trial court's jurisdiction to hold him in contempt. That court issued the writ. Ex parte Rountree,694 So.2d 13 (Ala.Civ.App. 1997). The trial judge then petitioned this Court for a writ of mandamus directing the Court of Civil Appeals to set aside its writ. Rule 21 (e), Ala.R.App.P. Because we conclude that the trial court had jurisdiction to hold contempt proceedings concerning the attorney, we grant the trial judge's petition for the writ of mandamus.
 I. Facts and Procedural History
Underlying this proceeding is a claim in the Circuit Court of Chambers County filed against Kenneth Hudmon by his ex-wife for payments, including delinquent child support payments, she alleges were due under a divorce judgment. On October 2, 1996, Hudmon asked Rountree, an attorney in Lee County, to represent him at a hearing that was scheduled for October 3.[1] Rountree told Hudmon that he could not represent him on that day because of a scheduling conflict, but Rountree advised Hudmon that if Hudmon could obtain a three- to four-week continuance then Rountree would represent him at that time.
On the same day, October 2, 1996, Rountree contacted the attorney for Hudmon's ex-wife to discuss a continuance. Rountree offered to have Hudmon pay $1,000 of the delinquent child support payments if the ex-wife would agree to a three- to four-week continuance. When Rountree was advised that Hudmon's ex-wife would not agree to a continuance, he wrote a letter, dated October 2, explaining to the trial court that he was willing to represent Hudmon if the court would grant a continuance for three or four weeks. The letter stated in pertinent part:
 "While this is not a notice of appearance, I would represent Mr. Hudmon if the matter is continued for three to four weeks."
Rountree gave the letter to Hudmon, asking him to hand deliver it to the trial court at the hearing scheduled for the next day, October 3.
On the morning of October 3, 1996, before the delivery of Rountree's letter to the trial court, Hudmon's ex-wife agreed to a continuance. Her attorney prepared a proposed order granting the continuance, but left blank the date of the next hearing. The proposed order listed Rountree as Hudmon's current attorney. The trial court, believing that Rountree was Hudmon's attorney, and unaware that Rountree had requested a three- to four-week continuance, completed and issued the order, rescheduling the hearing for October 8.
On Saturday, October 5, 1996, Rountree received a copy of the order granting the five-day continuance. On Monday, October 7, Rountree contacted the ex-wife's attorney and told him that he could not represent Hudmon at that time and that he could not attend the healing scheduled for October 8. Rountree also informed Hudmon that Hudmon *Page 3 
either would have to find another attorney or would have to represent himself at the October 8 hearing. Rountree did not, however, inform the trial court that he would not appear for the October 8 hearing.
At the hearing on Tuesday, October 8, 1996, Hudmon gave the trial court Rountree's October 2 letter requesting a three- to four-week continuance. The trial court expressed surprise at Rountree's absence and at his failure to inform the court on Monday, October 7, that he would not attend. Under questioning from the trial court, Hudmon admitted that he still did not have the funds to meet his delinquent child support obligations. Hudmon also stated that Rountree was familiar with numerous details regarding Hudmon's inability to make the child support payments. The trial court entered a judgment against Hudmon for the amounts past due, but was unwilling to punish Hudmon with a jail sentence for nonpayment, because Hudmon was not represented by an attorney at that hearing. Because the trial court was unsatisfied with the reasons for Rountree's absence and with his failure to contact the trial court, it cited Rountree for contempt and ordered him to appeal at the next hearing. The trial court continued the case until October 29 (27 days after Rountree's October 2 request for a three- to four-week continuance).
When Rountree learned that he had been cited for — charged with — contempt, he telephoned the trial judge and informed him that he did not represent Hudmon. Nonetheless, the trial judge orally ordered Rountree to appear on October 29, 1996, to explain why he had not attended the October 8 hearing. In a letter dated October 17, Rountree explained to the trial judge that he did not represent Hudmon. The trial judge responded with a written order dated October 22, withholding judgment on the October 8 contempt citation, but directing Rountree to appear on October 29 to explain why he should not be held in contempt of court.
On October 28, 1996, Rountree mailed to the Court of Civil Appeals a petition for a writ of prohibition directing the trial court not to proceed on the contempt citation at the hearing scheduled for October 29. Rountree did not attend the October 29 hearing. At the October 29 hearing, Hudmon was represented by another attorney; at that hearing he reached a settlement with his ex-wife, which prevented his being jailed for noncompliance with the trial court's previous order to pay the child support.
The trial court contacted the Court of Civil Appeals, confirmed that it had not received a petition for a writ of prohibition from Rountree, and then cited Rountree a second time for contempt and issued a warrant for Rountree's arrest. The trial court did not, however, enter a judgment of contempt.
Later on the day of October 29, 1996, the Court of Civil Appeals ordered a stay of the contempt proceeding. With an opinion dated April 25, 1997, the Court of Civil Appeals issued a writ of prohibition directing the trial court to withdraw its order requiring Rountree to appear and respond to the contempt citations. The Court of Civil Appeals concluded that because Rountree did not represent a party to the proceeding, had not filed an appearance in the trial court, and was not an official attorney of record in the case, the trial court's inherent contempt powers were not broad enough to reach Rountree. See Rountree, 694 So.2d 13. The trial judge then filed in this Court this petition, styled as a petition for the writ of prohibition, but which we treat as a petition for the writ of mandamus, asking this Court to direct the Court of Civil Appeals to set aside its writ.
 II. Procedure for Obtaining Review of Jurisdictional Issue
The attorney general, on behalf of the trial judge, first asserts that a writ of prohibition is not available to address anticipated errors in a contempt proceeding where those errors may be remedied on appeal. Specifically, he asserts that we should order Rountree to appear at a contempt hearing, allow him to complete the proceedings on the contempt citations, and then on appeal review the judgment, or judgments, if he is found in contempt. Rountree responds by arguing that a writ of prohibition is appropriate because he challenges the trial court's jurisdiction over him. The Court of Civil Appeals held that a writ of prohibition was the proper *Page 4 
procedure for challenging the jurisdiction of the trial court to hold a person in contempt. We agree.
The attorney general correctly states that Alabama provides a statutory right to appeal from a judgment of contempt. Section12-1-11, Ala. Code 1975, provides for such an appeal, and that section states that "[o]n such appeal the question shall be whether the appellant was guilty of contempt." The question here, however, is not whether Rountree is guilty of contempt, an issue yet to be determined, but whether the trial court had the jurisdiction to make such a determination. A writ of prohibition is a preventive measure, rather than a corrective remedy. Ball v.Jones, 272 Ala. 305, 315, 132 So.2d 120, 128 (1961). Its purpose is to prevent a lower court from acting outside its jurisdiction.State v. Crossman, 687 So.2d 817, 818 (Ala.Crim.App. 1996). Accord Ex parte City of Tuskegee, 447 So.2d 713, 716 (Ala. 1984);Ex parte State ex rel. Bragg, 240 Ala. 80, 85, 197 So. 32, 36
(1940). Accordingly, we hold that Rountree's petitioning the Court of Civil Appeals for a writ of prohibition was the proper procedure for challenging the trial court's jurisdiction in this contempt proceeding.[2]
 III. Jurisdiction to Hold Contempt Proceedings
The attorney general also argues that the trial court has the inherent authority to hold contempt proceedings with respect to attorneys because attorneys are officers of the court. The attorney general further argues that Rountree's material involvement in the trial proceedings subjected him to jurisdiction in a contempt proceeding. Rountree responds by arguing that the inherent jurisdiction of the trial court to hold contempt proceedings cannot extend to him because he never made an official appearance in the case. Lee v. Martin, 533 So.2d 186
(Ala. 1988); Maner v. Maner, 279 Ala. 652, 189 So.2d 336 (1966). The Court of Civil Appeals noted that "Rountree did not represent any of the parties in the underlying case before the trial judge . . . [and] . . . Rountree was not an attorney of record in the underlying case [and did not] make an appearance in that case." Rountree, 694 So.2d at 18. Thus, that court concluded that the trial court did not have jurisdiction over Rountree. We disagree.
 A. The Proper Test
A properly crafted jurisprudential test must advance the intrinsic legal interests at stake and must prove amenable to practical application by the bench and bar. See generally Benjamin N. Cardozo, The Nature of the Judicial Process 28, 40-41, 48 (1926) (emphasizing that a jurisprudential rule must accurately embody the fundamental conceptions of the interests at stake and stating that the rule will be reframed if it does not);Burnet v. Coronado Oil Gas Co., 285 U.S. 393, 407-08,52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting) (stating that a judicial standard should be modified or replaced if it fails to withstand the force of better *Page 5 
reasoning); Swift Co. v. Wickham, 382 U.S. 111, 116,86 S.Ct. 258, 15 L.Ed.2d 194 (1965) (stating that a jurisprudential standard that has proven unworkable in practice should be replaced). The test articulated by the Court of Civil Appeals limited the trial court's contempt jurisdiction to those persons with an official connection to the case. This test provides a workable standard, but it fails to adequately advance the intrinsic interests of the judiciary in the effective and efficient conduct of its proceedings.
Requiring that an attorney have an official connection to a particular case before his actions will bind a litigant principally advances the due process interests of that litigant in receiving effective notice of legal proceedings. See Mullanev. Central Hanover Bank Trust Co., 339 U.S. 306, 314,70 S.Ct. 652, 94 L.Ed. 865 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); Alabama Alcoholic Beverage Control Bd. v. State exrel. Krasner, 247 Ala. 469, 471, 25 So.2d 30, 32 (1945) (stating that due process requires that a party have adequate notice of a proceeding before that party can be bound by that proceeding). For example, in Maner, 279 Ala. 652, 189 So.2d 336, this Court considered whether notice sent to a Florida attorney bound a litigant in an Alabama proceeding. This Court held that because the Florida attorney was not the litigant's attorney of record in the Alabama proceeding, the notice to the Florida attorney was insufficient to bind that litigant to the judgment of the Alabama court. Id. at 658, 189 So.2d at 342. See Lee, 533 So.2d at 186 (defining an "appearance" not to include mere negotiation between parties and counsel outside of court, but to include the filing of some writing with the court). Thus, the "official connection" test used by the Court of Civil Appeals advances the interests of the litigants in receiving notice of judicial proceedings that may bind them.
While the official connection test adequately advances the due process interests of the litigants, those interests are not at issue in this case. Instead, this case concerns the interests of the Judicial Branch of government in the effective and efficient conduct of court proceedings.
The Constitution of Alabama of 1901 vests the judicial power in the Unified Judicial System. Ala. Const. 1901, amd. 328, § 6.01 (a).[3] The judicial power, at its core, is the power to render final judgments in cases before the courts. See Marbury v.Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."); Plaut v. Spendthrift Farm, Inc.,514 U.S. 211, 219, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (stating that the Constitution gives the "Judiciary the power, not merely to rule on cases, but to decide them"); Sanders v. Cabaniss, 43 Ala. 173,177 (1869) (stating that the judicial power requires the exercise of judgment in a case or controversy). Inherent in the constitutional obligation to render final judgments is the power to conduct judicial proceedings in an efficient and effective manner. See Ex parte Wetzel, 243 Ala. 130, 132, 8 So.2d 824, 825
(1942) (stating that a court has the "inherent power" to punish for contempt); Hall v. Hall, 485 So.2d 747, 749-50 (Ala.Civ.App. 1986) (stating that the Judiciary's authority to protect its adjudicatory processes is fundamental to its ability to effectively and efficiently administer justice).
The interests implicated in effectively and efficiently conducting a judicial proceeding are not adequately served by limiting the exercise of judicial power to those who have an official connection to the proceeding. The administration of a judicial proceeding may be adversely affected by persons with no official connection to the proceeding. For example, in Coleman v.Roberts, 113 Ala. 323, *Page 6 21 So. 449 (1896), this Court stated that all who were present, whether by court order or voluntarily as mere bystanders or spectators, were subject to the contempt jurisdiction of the court, insofar as was necessary for the preservation of its order and decorum. Also, in Ex parte Mayor of Birmingham, 134 Ala. 609,33 So. 13 (1902), this Court held that a trial court's contempt power extended to the prohibition of pedestrian travel along a street immediately in front of the courthouse, when the travel interfered with the administration of justice.
The key interest to be protected by the contempt power, then, is a court's freedom from interference in the conduct of a judicial proceeding, whether that interference is caused by persons having an official connection to the proceeding, or by others. See, e.g., Ex parte Mayor of Birmingham, 134 Ala. 609,33 So. 13. There are three prerequisites to the trial court's use of the contempt power to protect its proceedings from interference: (1) jurisdiction over an underlying legal proceeding;[4] (2) jurisdiction over the subject matter — the contempt;[5] and (3) jurisdiction over the person — the contemnor. Robertson v. State,20 Ala. App. 514, 526, 104 So. 661, 573 (1924) (citing Ex parteCreasy, 243 Mo. 679, 699, 148 S.W. 914, 920 (1912)).[6] To the extent there has been interference with a court's judicial proceeding that court has subject matter jurisdiction over that interference. By virtue of the interference, the trial court has personal jurisdiction over any person who is a significant cause of that interference. An assessment of each of these elements should be set forth in the trial court's order or in transcripts of a hearing, to facilitate proper appellate review. The issue in this case is the degree of interfering contact a person must have with a judicial proceeding to invest the court with personal jurisdiction over him. We hold that the personal jurisdiction of a court to charge a person with contempt extends to those persons who have caused significant interference with the orderly and efficient conduct of that court's judicial proceedings.
 B. Application of the Test
To decide whether the trial court may exercise its contempt power against Rountree, we must examine the facts and circumstances and determine whether each of the prerequisites for the exercise of such power exists. First, none of the parties disputes the trial court's jurisdiction over the underlying child support case. Robertson, 20 Ala. App. at 526, 104 So. at 573. Second, the delay of both the October 8, 1996, hearing *Page 7 
and that portion of the October 29 hearing concerning Rountree constituted interference, and thus conferred subject matter jurisdiction in the trial court. See Northern v. Hanners,121 Ala. 587, 588, 25 So. 817, 817 (1899) (noting that delay of justice has long been punished by contempt).
Third, Rountree engaged in conduct that caused significant interference with the trial court's proceedings; thus, the trial court had personal jurisdiction over him. Robertson,20 Ala. App. at 526, 104 So. at 573. The trial court held a hearing on October 8, 1996, but postponed imposing punishment on Hudmon for nonpayment of child support until October 29, because of Rountree's failure to inform the trial court of his inability to attend the October 8 hearing. Although he received a copy of the trial court's order stating that the hearing was set for Tuesday, October 8, Rormtree, an attorney and officer of the court, made no effort to inform the trial court that he would not attend that hearing. See Jackson v. State, 337 So.2d 1281, 1284 (Ala. 1976) ("If conflicts in scheduling arise, prompt, considerate notice tothe judge should be provided. . . .").[7] Moreover, Rountree affirmatively interjected himself into the proceeding by sending a hand-delivery letter to the trial court stating that he would represent Hudmon if granted a three- to four-week continuance.
After Rountree had received the three- to four-week continuance he had requested, and after he had received oral and written orders from the trial court to appear at the October 29, 1996, hearing, he nevertheless failed to appear. Further. he did not file a copy of his petition for a writ of prohibition with the trial court before the date set for the hearing. Thus, the trial court engaged in a further proceeding a portion of which could have been avoided if Rountree had filed a copy of his writ of prohibition with the trial court before October 29. See Jackson, 337 So.2d at 1283-84 (requiring notice to the judge); Northern,121 Ala. at 588, 25 So. at 817 (providing that delay of judicial proceedings is punishable by the contempt power). We hold that these delays constitute significant interference with the trial court's proceedings and that they are therefore sufficient to confer on the trial court personal jurisdiction over Rountree.[8]
 IV. Referral of Contempt Proceeding
Rountree contends that if we hold that the trial court does have jurisdiction over him, then we should order the trial judge to refer the contempt proceeding to another judge. Rountree states that referral is required because of heated exchanges he says have occurred between the trial judge and Rountree and Hudmon.
Rule 70A(f), Ala. R. Civ. P., provides in pertinent part:
 "[I]f the judge's own conduct is so related to the alleged contumacious conduct that the judge may have contributed to or may have been otherwise involved in it, then . . . the contempt proceeding shall be referred to another judge, who shall hold a hearing to determine whether the person charged with contempt committed the contempt charged, and, if so, to impose punishment."
Although a motion for transfer would normally be made first to the trial court, see generally Ex parte Crawford, 686 So.2d 196
(Ala. 1996), our careful review of the materials before us indicates that the trial judge was involved in the sequence of events that led to the discord below and that he will probably be a witness regarding his out-of-court communications with Rountree. Thus, referral under Rule 70A(f) is proper. *Page 8 
Because Rountree was subject to the contempt jurisdiction of the trial court, we grant the trial judge's petition for the writ of mandamus. We direct the Court of Civil Appeals to vacate its writ of prohibition and to enter an order instructing the trial judge to refer the contempt proceeding to another judge.
PETITION GRANTED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, and LYONS, JJ., concur.
COOK, J., concurs in the result.
KENNEDY, J., dissents.
[1] Rountree had previously represented Hudmon in an unrelated matter.
[2] We note that there are generally four prerequisites to the issuance of a writ of prohibition: "(1) usurpation or abuse of power by an inferior judicial or quasi-judicial tribunal, (2) lack of another adequate remedy, (3) injury to the petitioner, and (4) presentation of the question before the inferior tribunal before resorting to the writ." Barber Pure Milk Co. v. AlabamaState Milk Control Bd., 274 Ala. 563, 565, 150 So.2d 693, 695
(1963). However, "the petitioner need not make application to an inferior tribunal before resorting to the writ of prohibition where it is apparent that objection would be unavailing." Id. at 566, 150 So.2d at 695.
While ordinarily it would be necessary for Rountree to appear before the trial court as directed, before he could petition for a writ of prohibition, our review of the materials before us indicates that submitting the jurisdictional question to the trial judge would have been unavailing in this case. Before filing the petition for writ of prohibition with the Court of Civil Appeals, Rountree twice had attempted to avoid the October 29, 1996, hearing, asserting that he had never made an official appearance in the case. Unconvinced, the trial judge responded with oral and written orders demanding his appearance at the October 29 hearing. After Rountree had filed his petition for the writ of prohibition, the trial judge remained steadfast in his position, explaining in a letter dated November 18 that he was "well within [his] rights in dealing with all matters involving Mr. Rountree." This demonstrates that it would have been unavailing for Rountree to submit the jurisdictional issue to the trial judge before petitioning for the writ of prohibition.
[3] Section 42 of the Constitution of Alabama of 1901 provides:
 "The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative to one; those which are executive, to another; and those which are judicial, to another."
[4] This Court has previously held that parties to a proceeding as to which the trial court lacked jurisdiction were not within the contempt jurisdiction of the court. See State v. Thomas,550 So.2d 1067 (Ala. 1989). The power to protect the orderly and efficient administration of judicial proceedings does not extend to interference in proceedings that are extrajurisdictional and illegal. See Board of Revenue v. Merrill, 193 Ala. 521, 68 So. 971
(1915); see generally, P.H. Vartanian, Annotation, Right toPunish for Contempt for Failure to Obey Court Order or DecreeEither Beyond Power or Jurisdiction Court or Merely Erroneous, 12 A.L.R.2d 1059 (1950).
[5] We note that "contemptuous interference" may take many forms. "Indirect" interference may consist of willful disobedience or resistance to orders or process of the court. Inre Tarpley, 293 Ala. 137, 300 So.2d 409 (1974). "Direct" interference make take several forms, including:
 "(1) Disrespectful, contemptuous or insolent behavior in court, tending in any way to diminish or impair the respect due to judicial tribunals or to interrupt the due course of trial;
 "(2) A breach of the peace, boisterous conduct, violent disturbance or any other act calculated to disturb or obstruct the administration of justice, committed in the presence of the court or so near thereto as to have that effect;
 "(3) The misbehavior of any officer of the court in his official transactions or the disobedience or resistance of any officer of the court party, juror, witness or any other person to any lawful writ, process, order, rule, decree or command thereof;
 "(4) Deceit or the abuse of the process of the proceedings of the court by any person or party or any unlawful interference with the process or proceedings of the court. . . ."
Ala. Code 1975, § 12-1-8.
[6] In Tetter v. State ex rel. Baxley, 358 So.2d 1043, 1045
(Ala.Crim.App. 1977), the Court of Criminal Appeals overruledRobertson on the narrow issue concerning appellate jurisdiction to review criminal contempt convictions arising out of purely civil proceedings. In Tetter, the Court of Criminal Appeals held that it did not have appellate jurisdiction to review criminal contempt judgments arising out of purely civil proceedings. Accord Tetter v. State, 358 So.2d 1046 (Ala. 1978).
[7] In Jackson, 337 So.2d at 1288-84, this Court elaborated on the special relationship courts have with attorneys, who are officers of the court:
 "Considering the human effort and monetary expense involved in arranging courtroom hearings, the least a court may expect from its officers is appearance on schedule and full preparation for the dispatch of court business. If conflicts in scheduling arise, prompt, considerate notice to the judge should be provided so that those in attendance may not be unnecessarily inconvenienced and the business of the court may continue without interruption.
[8] We, of course do not address the merits of the contempt charges, and we recognize that Rountree may present justifiable reasons for the actions that resulted in the delays.