Rel: May 22, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

### CL-2025-0417

_____

### Jessica Hall

### v.

### Laddin Cole Mock

### Appeal from Geneva Circuit Court
### (DR-17-900010.03)

MOORE, Presiding Judge.

Jessica Hall appeals from a judgment entered by the Geneva Circuit Court ("the circuit court") finding her in contempt of court and modifying the custody of her child with Laddin Cole Mock. Because the circuit court lacked jurisdiction to enter the judgment, we dismiss this

appeal, albeit with instructions for the circuit court to vacate the judgment.

## Procedural History

In January 2019, the circuit court determined that Mock was the legal father of the parties' child, awarded the parties joint legal custody of the child, awarded sole physical custody of the child to Hall, subject to certain visitation rights awarded to Mock,[1] and ordered Mock to pay child support to Hall. In February 2023, Mock filed a petition in the circuit court, seeking an order holding Hall in contempt for allegedly interfering with his visitation rights under the 2019 judgment and requesting that the circuit court modify the custody of the child; that petition was assigned case number DR-17-900010.03 ("the .03 action"). On March 30, 2023, Mock amended his petition in the .03 action to assert a second count for contempt. Hall filed an answer and a counterclaim to modify Mock's visitation rights.

---

[1]In the 2019 judgment, the circuit court awarded Mock the right to visit with the child at reasonable times and reasonable places upon giving Hall reasonable notice. In addition, the circuit court established a visitation schedule that gave Mock the right to visit with the child every other weekend, one month during the summer, and on certain holidays.

On March 15, 2024, the circuit court entered a judgment in the .03 action, citing Hall for contempt, ordering her to pay $2,500 toward Mock's attorney's fees, and directing Hall to "follow the visitation order in place." The March 15, 2024, judgment further provided that "[a]ll other motions, petitions or claims for relief, by either party, not granted herein, are denied."

On April 11, 2024, Mock filed in the .03 action a motion titled "Motion for Sanctions." In that motion, Mock alleged that Hall had refused to allow him to pick up the child for visitation on March 29, 2024, in violation of the March 15, 2024, judgment entered in the .03 action. Mock requested that the circuit court sanction Hall and order her to pay his attorney's fees. On April 11, 2024, Hall filed a response to the motion, denying that she had disobeyed the operative visitation order; Hall later amended her response to clarify that she was following the visitation schedule in the 2019 judgment and to request that the circuit court order Mock to pay her attorney's fees.

On June 12, 2024, the circuit court held a hearing on the motion for sanctions. On June 14, 2024, the circuit court entered an order, granting the motion. That order provides, in pertinent part:

"[Hall] is sanctioned as follows:

"[Mock] shall have temporary custody of the minor child of the parties for a period of 30 days to begin immediately. [Hall] may visit said child on alternating weekends. After the 30 days of temporary custody the regular order of custody and visitation will resume. When the regular order resumes, [Hall] is Ordered, pursuant to [Mock]'s reasonable visitation, to accommodate [Mock] with his work schedule for his visitation."

The circuit court also indicated that it considered Mock's modification petition to still be pending, and it scheduled a "final hearing" on his modification petition for August 28, 2024.

The circuit court eventually conducted a hearing on November 13, 2024. At the outset of the hearing, Mock's counsel stated that the claims to be tried were Mock's contempt claim against Hall and Mock's modification claim. Hall's counsel objected to the circuit court's hearing the modification claim, pointing out that the circuit court had adjudicated Mock's modification petition in the judgment that was entered on March 15, 2024, when it ruled that all claims other than Mock's contempt claims were denied. Hall's counsel further noted that Mock had not paid a filing fee to commence a new modification action and argued that the circuit court lacked jurisdiction to modify the custody of the child. The circuit-

4

court judge responded that, although the March 15, 2024, judgment was final, "we're here on contempt" and that the custody of the child could still be modified as a form of relief for contempt, without the filing of a new modification petition. Hall objected and disputed the proposition that the custody of a child could be modified in a contempt proceeding. Mock's counsel offered to file a new modification petition, but, when given the option, Mock elected to proceed with a bench trial in the .03 action based on his April 11, 2024, motion for sanctions. The hearing commenced over Hall's objection, and, after a recess, the hearing concluded on January 31, 2025.

On February 3, 2025, the circuit court entered a "Final Order" in which it recounted the procedural history of the case. In that judgment, the circuit court stated that Mock's counsel had "offered to amend his pleading, however, the Court assured counsel that if the facts warranted, the Court could change custody under a continuing contempt petition." The circuit court then found that the physical custody of the child should be modified to prevent Hall from alienating the child from Mock. The circuit court determined that Hall had coached the child to accuse Mock

5

of sexually abusing her and that Hall would not obey the visitation orders entered by the circuit court. The judgment then provided:

> "Therefore, the Court finds [Hall] in willful contempt of Court and orders the custody to be modified for [Mock] to have primary physical custody of [the parties' child] and [Hall] to have reasonable visitation as set out for [Mock] in the original order for custody on January 18, 2019. [Mock]'s child support is terminated."

The circuit court also determined that Mock had met the burden to prove that custody of the child should be modified. See Ex parte McLendon, 455 So. 2d 863 (Ala. 1984).

Hall filed a postjudgment motion on February 25, 2025. In her postjudgment motion, Hall argued that the circuit court had entered a final judgment in the .03 action on March 15, 2024, and that no new action had been commenced after the entry of that final judgment. Hall contended that, after the entry of that final judgment, the circuit court did not have jurisdiction in the .03 action to conduct further evidentiary hearings or to enter orders based on those hearings. The circuit court held a hearing on that motion on April 30, 2025, during which Hall again argued that the circuit court did not have jurisdiction over the .03 action after the entry of the March 15, 2024, judgment. The circuit court denied the motion on May 1, 2025, and Hall timely appealed.

6

<u>The March 15, 2024, Judgment</u>

In her brief to this court, Hall again argues that the March 15, 2024, judgment was a final judgment. A final judgment is one that completely adjudicates all matters in controversy between the parties, see <u>Eubanks v. McCollum</u>, 828 So. 2d 935, 937 (Ala. Civ. App. 2002), in a form consistent with Rule 58(b), Ala. R. Civ. P. ("A written order or a judgment will be sufficient if it is signed or initialed by the judge ... and indicates an intention to adjudicate, considering the whole record, and if it indicates the substance of the adjudication.").

When the circuit court entered the March 15, 2024, judgment, the only matters in controversy in the .03 action were Mock's claims that Hall was in contempt for violating the visitation provisions of the 2019 judgment, Mock's petition to modify the custody of the child, and Hall's counterclaim to modify Mock's visitation rights. The March 15, 2024, judgment expressly adjudicated the contempt claims by finding Hall in contempt, by ordering Hall to pay Mock's attorney's fees, and by directing Hall to comply with the visitation order that was in place, i.e., the visitation provisions in the 2019 judgment. The March 15, 2024, judgment also implicitly adjudicated Mock's and Hall's modification

claims by providing that "[a]ll other motions, petitions or claims for relief, by either party, not granted herein, are denied." See M.S.H. v. C.A.H., 829 So. 2d 164, 168 (Ala. Civ. App. 2002) ("Although the trial court's … judgment did not specifically address some of the father's assertions, that judgment states in pertinent part that 'all other relief sought herein is denied.' Thus, we conclude that the trial court's … [judgment] clearly disposed of all of the parties' arguments, and, therefore, that it constituted a final judgment.").

In all other respects, the March 15, 2024, judgment complied with Rule 58(b) to constitute a final judgment. Upon the entry of that judgment pursuant to Rule 58(c), the .03 action terminated. See Ex parte Wharfhouse Rest. & Oyster Bar, Inc., 796 So. 3d 316, 320 (Ala. 2001) ("In order to terminate a civil action filed in an Alabama court, the court must enter a final judgment in that action."). Thus, we agree with Hall that the March 15, 2024, judgment was a final judgment that concluded the .03 action.

### The April 11, 2024, Motion for Sanctions

On April 11, 2024, 27 days after the entry of the March 15, 2024, final judgment, Mock filed a "Motion for Sanctions" in the .03 action. In

that motion, Mock alleged that, on March 29, 2024, Hall had violated the terms of the March 15, 2024, final judgment requiring her to "follow the visitation order in place," i.e., the visitation provisions of the 2019 judgment. Mock requested that the circuit court impose appropriate sanctions upon Hall for her disobedience and award him attorney's fees.

In Kaufman v. Kaufman, 934 So. 2d 1073 (Ala. Civ. App. 2005), the Houston Circuit Court entered a judgment on June 3, 2004, divorcing the husband and the wife. On July 1, 2004, 28 days later, the husband filed a motion for sanctions against the wife. In the motion, the husband did not seek to alter, amend, or vacate the divorce judgment; instead, he asked the Houston Circuit Court to impose sanctions upon the wife for allegedly removing items from the marital residence in violation of a court order. The husband also requested an award of attorney's fees. Considering the substance of the motion, see Evans v. Waddell, 689 So. 2d 23, 26 (Ala. 1997), this court determined that the motion was a contempt motion, not a postjudgment motion governed by Rule 59, Ala. R. Civ. P. 934 So. 2d at 1081.

In this case, Mock filed a motion almost identical to the motion that was filed in Kaufman; he sought an order imposing sanctions and

9

attorney's fees upon Hall for violating the visitation terms of the 2019 judgment as reinforced by the March 15, 2024, judgment. Although the motion for sanctions was filed within 30 days of the entry of the March 15, 2024, judgment and within the deadline for filing a Rule 59 motion, the motion was not a postjudgment motion to alter, amend, or vacate the March 15, 2024, judgment; it was a contempt motion alleging completely new acts of contempt distinct from those that had been alleged by Mock in his earlier contempt petitions.

## The Filing-Fee Requirement

In 1975, the legislature enacted laws governing the filing fees to be collected in civil cases. See Ala. Acts 1975, Act No. 1205, § 16-111. The consolidated-fee structure established by those laws, which are now contained in Ala. Code 1975, § 12-19-70 et seq., applied to "cases filed" in the trial courts. Id. In 1977, and again in 1980, the Clerk of the Alabama Supreme Court opined that a motion to hold a party in contempt for disobeying a final judgment initiated a new and independent "case" for which a separate filing fee was due. See Opinion of the Clerk, No. 3, 345 So. 2d 1338 (Ala. 1977); Opinion by the Clerk, No. 25, 381 So. 2d 58, 59 (Ala. 1980).

In 2004, the legislature amended Ala. Code 1975, § 12-19-71, to establish a specific filing fee of $248 "for cases filed in the domestic relations docket of the circuit court seeking to modify or enforce an existing domestic relations court order." Ala. Acts 2004, Act No. 2004-636, § 1, codified at Ala. Code 1975, § 12-19-71(a)(7). In Kaufman, supra, this court, relying in part on Opinion by the Clerk, No. 25, held that a constructive-contempt motion that was filed after the entry of a final judgment initiated a new case and required the payment of the $248 filing fee. See also Kaufmann v. Kaufmann, 960 So. 2d 689, 692 (Ala. Civ. App. 2006). Since 2004, a party who petitions a circuit court to enforce a final domestic-relations judgment through postjudgment contempt proceedings must pay the requisite filing fee established in § 12-19-71(a)(7), or obtain a hardship waiver of the fee, to commence a new and independent action. See Opinion of the Clerk, No. 55, 49 So. 3d 1170, 1172 (Ala. 2009).

In this case, it is undisputed that Mock did not pay a filing fee with his April 11, 2024, contempt motion or obtain a hardship waiver of the fee. Mock simply filed a contempt motion in the existing .03 action. Mock points out that he paid a filing fee in 2023, but that filing fee related

11

solely to the contempt/modification petition that he filed on February 3, 2023, and the amended contempt petition that he filed on March 30, 2023. Once the claims asserted in those petitions were finally adjudicated in the March 15, 2024, judgment, Mock had to pay another filing fee to invoke the jurisdiction of the circuit court to hear his new contempt petition relating to the alleged denial of his visitation on March 29, 2024. See Fox v. Arnold, 127 So. 3d 417, 421 (Ala. Civ. App. 2012) (holding that, once trial court entered a final judgment in postdivorce proceedings, parties had to initiate a new action and pay the filing fee to invoke trial court's jurisdiction over any subsequent contempt petitions or contempt motions).

Mock implies that his motion for sanctions should have been treated as an amendment to his original contempt petition based on a continuing pattern of Hall's contemptuous conduct and, thus, covered by the original filing fee he paid in 2023. But that motion related to an alleged discrete denial of visitation occurring on March 29, 2024, and, regardless, the circuit court did not have jurisdiction to allow an amendment to the original contempt petition after it had entered the March 15, 2024, final judgment, unless it first properly set aside that

12

judgment. See Faith Props., LLC v. First Cmty. Bank, 988 So. 2d 485, 490 (Ala. 2008). Rule 59 allowed the circuit court to set aside the final judgment, either on a motion filed by one of the parties or on its own motion, within 30 days of the entry of the March 15, 2024, judgment. See Ex parte DiGeronimo, 195 So. 3d 963, 968-69 (Ala. Civ. App. 2015). However, neither party filed a postjudgment motion to set aside the March 15, 2024, final judgment, and the trial court did not act within 30 days to set aside the judgment on its own motion.

The failure to pay a filing fee or to obtain a waiver of the fee when filing a postjudgment contempt petition is a jurisdictional defect. See G.E.A. v. D.B.A., 920 So. 2d 1110 (Ala. Civ. App. 2005). In De-Gas, Inc. v. Midland Resources, 470 So. 2d 1218, 1222 (Ala. 1985), our supreme court held that the payment of the mandatory filing fee or the filing of a court-approved verified statement of substantial hardship "is a jurisdictional prerequisite to the commencement of an action for statute of limitations purposes." Although De-Gas concerned only the issue whether the payment of a filing fee when filing a complaint was necessary to toll the statute of limitations, after De-Gas was decided the supreme court expanded its reasoning by holding that the payment of a filing fee

13

is a jurisdictional prerequisite to commencing any new action. See Johnson v. Hetzel, 100 So. 3d 1056 (Ala. 2012). Because "a petition seeking the imposition of sanctions based on a finding of contempt initiates an independent proceeding that requires payment of a filing fee," Ex parte SE Prop. Holdings, LLC, 353 So. 3d 533, 536 (Ala. 2021), this court has repeatedly held that the failure to pay the requisite fee when filing a postjudgment contempt motion deprives the trial court of jurisdiction to act on the motion. See Kaufman, supra; Colburn v. Colburn, 14 So. 3d 176 (Ala. Civ. App. 2009); Fox, supra.

In Hicks v. Hicks, 130 So. 3d 184 (Ala. Civ. App. 2012) (plurality opinion), this court applied that reasoning in a case involving a boundary-line dispute and held that a contempt petition filed almost one year after the final judgment had been entered had not invoked the jurisdiction of the trial court because the movant had not paid the requisite filing fee or obtained a waiver of the fee. Presiding Judge Thompson dissented, arguing that the failure to pay the requisite filing fee along with the contempt petition should not be considered a jurisdictional defect and that this court had been misapplying the holding in De-Gas.

14

In Ex parte Hicks, 130 So. 3d 194 (Ala. 2013), the supreme court denied certiorari review of our decision in Hicks. In a dissent, Chief Justice Moore contended that the supreme court and this court had improperly expanded the holding in De-Gas and that those cases should be reconsidered. Chief Justice Moore wrote:

> "I agree with Judge Thompson's concerns regarding De-Gas, [Johnson v.] Hetzel, [100 So. 3d 1056 (Ala. 2012)], and cases that have, in my opinion, improperly expanded the holding in De-Gas. This Court in De-Gas used the filing-fee requirement to determine whether a case had been 'commenced' within the limitations period and referred to the fee as a 'jurisdictional prerequisite.' Thereafter, the Farmer [v. Farmer, 842 So. 2d 679 (Ala. Civ. App. 2002)], Odom [v. Odom, 89 So. 3d 121 (Ala. Civ. App. 2011)], and Vann [v. Cook, 989 So. 2d 556 (Ala. Civ. App. 2008)], decisions expanded upon the holding in De-Gas and made the failure to pay a filing fee in any case a bar to subject-matter jurisdiction. This Court in Hetzel appeared to endorse the expansion of the holding in De-Gas. ... I join Judge Thompson in the belief that this Court and the Court of Civil Appeals have erroneously confused subject-matter jurisdiction and filing-fee requirements in cases applying the holding in De-Gas. I urge this Court to consider this issue in a future case."

130 So. 3d at 198 (Moore, C.J., dissenting) (footnote omitted; second emphasis added). Although the denial of a petition for a writ of certiorari is "not legal precedent concerning any consideration of the merits of the underlying case," Shepherd v. Summit Mgmt. Co., 794 So. 2d 1110, 1115 (Ala. Civ. App. 2000), after the supreme court's decision in Ex parte Hicks

15

and after reviewing <u>Hetzel</u>, <u>supra</u>, Presiding Judge Thompson, like Chief Justice Moore, conceded that the supreme court had "effectively endorsed our expansion of the holding in <u>De-Gas</u>." <u>Merriam v. Davidson</u>, 184 So. 3d 411, 414 (Ala. Civ. App. 2015) (Thompson, P.J., concurring in the result).

Since <u>Ex parte Hicks</u>, the supreme court has not addressed whether the payment of a filing fee is a jurisdictional prerequisite to commencing a postjudgment contempt proceeding; however, the supreme court has reaffirmed that the failure to pay a required filing fee, or to obtain a waiver of the fee, is, in general, a jurisdictional defect. See <u>Ex parte Courtyard Citiflats, LLC</u>, 191 So. 3d 787 (Ala. 2015); <u>see also</u> <u>Ex parte CVS Pharmacy, L.L.C.</u>, 209 So. 3d 1111 (Ala. 2016); <u>Daniel v. Moye</u>, 224 So. 3d 115, 139 n.11 (Ala. 2016); <u>Ex parte Price</u>, 264 So. 3d 35 (Ala. 2018); <u>Johnson v. Ellis</u>, 308 So. 3d 1 (Ala. 2020). At the same time, this court has consistently ruled that a trial court lacks jurisdiction over a postjudgment contempt petition when no filing fee has been paid or no waiver of the fee has been obtained. <u>See</u>, <u>e.g.</u>, <u>Hall v. Hall</u>, 122 So. 3d 185, 192 (Ala. Civ. App. 2013); <u>Merriam</u>, 184 So. 3d at 414; <u>Hathaway v. Foos</u>, 254 So. 3d 230 (Ala. Civ. App. 2017); <u>Rowland v. Tucker</u>, 286 So. 3d

16

713 (Ala. Civ. App. 2019); Ex parte Autauga Cnty. Dep't of Hum. Res., 348 So. 3d 403 (Ala. Civ. App. 2021); Kornegay v. Kornegay, 369 So. 3d 1052, 1058 (Ala. Civ. App. 2022); J.N.M.-R. v. M.D.L.-C., 380 So. 3d 395 (Ala. Civ. App. 2022); Milton v. Delta Props., LLC, 403 So. 3d 160 (Ala. Civ. App. 2024); Alabama High Sch. Athletic Ass'n v. W.T.K. ex rel. M.L.K., [Ms. CL-2025-0743, Nov. 7, 2025] ___ So. 3d ___ (Ala. Civ. App. 2025). The latter line of cases does not conflict with Ex parte Segrest, 718 So. 2d 1, 6 (Ala. 1998), which outlined the jurisdiction a trial court must have to exercise its contempt power. The cases simply add that, to have jurisdiction over the subject matter of a contempt proceeding following the entry of a final judgment, a trial court must collect the required filing fee or obtain a waiver of the fee.

The supreme court's decision in City of Orange Beach v. Lamar Cos., 403 So. 3d 832 (Ala. 2024), does not implicitly overrule that unbroken line of cases. In Lamar Cos., the Baldwin Circuit Court entered a consent judgment in 2011 in two separate civil actions involving a zoning dispute between the City of Orange Beach and Lamar Companies. The parties had settled their dispute, and the consent judgments incorporated the settlement agreement. In 2023, Lamar Companies filed

17

a motion in one of the civil actions to enjoin the City of Orange Beach from enforcing the consent judgments and a particular zoning ordinance pertaining to billboard signs. In that motion, Lamar Companies asserted, among other things, that the City of Orange Beach had selectively enforced the zoning ordinance after the consent judgments had been entered. The City of Orange Beach countered by filing a "Motion to Enforce Judgment and for Finding of Contempt" in both civil actions. The Baldwin Circuit Court denied the motion filed by the City of Orange Beach, and the City of Orange Beach appealed that ruling to our supreme court.

Lamar Companies moved the supreme court to dismiss the appeal because, it argued, the order from which the City of Orange Beach had appealed was not a final judgment. The supreme court denied the motion, holding that, in seeking enforcement of the consent judgments, the City of Orange Beach was essentially requesting an injunction and that the appeal arose from an order refusing the injunction, which is appealable under Rule 4(a)(1)(A), Ala. R. App. P. In addressing whether the motion to enforce the consent judgments should have been granted, the supreme court noted that the Baldwin Circuit Court had residual

18

jurisdiction to enforce the settlement agreement, but that it did not have jurisdiction to consider any new claims made by Lamar Companies based on the alleged selective enforcement of the zoning ordinance without the commencement of a new action and the payment of a filing fee.

Although the City of Orange Beach appealed the denial of its "Motion to Enforce Judgment and for Finding of Contempt," Lamar Cos. does not address the contempt portion of that motion at all, confining the scope of the appeal solely to the denial of the motion to enforce the judgment by injunction. As Lamar Cos. recognizes, an injunction may be used to enforce the terms of a consent judgment, just like a contempt proceeding may be used to enforce the terms of a final judgment. However, no Alabama appellate court has ever held that a motion to enforce the terms of a final judgment by injunction commences a new and separate action, compare Kyle v. Kyle, 128 So. 3d 766, 772 (Ala. Civ. App. 2013) ("It is well settled that the filing of any contempt motion relating to the failure to abide by the terms of a final divorce judgment requires the initiation of an independent proceeding."), and no authoritative legal opinion has ever held that the filing of a motion for an injunction to enforce a final judgment initiates a new case requiring the payment of a

19

filing fee. Compare Opinion of the Clerk, No. 3, supra (holding that the filing of a contempt petition commences a new case, which requires the payment of a filing fee). A contempt proceeding is sui generis. See Hall v. Hall, 485 So. 2d 747, 749 (Ala. Civ. App. 1986). In Lamar Cos., the supreme court did not consider the issue whether a trial court may assert jurisdiction over a postjudgment contempt petition without the payment of a filing fee, even implicitly, and it did not express any disagreement with the series of cases requiring the payment of a filing fee to invoke the jurisdiction of a trial court to enforce a judgment through its contempt powers, especially our domestic-relations cases. In Lamar Cos., the supreme court did not sub silentio overrule a line of cases going back to the establishment of the consolidated-fee structure in 1975, and we see no reason to depart from the doctrine of stare decisis based on that opinion. See Exxon Corp. v. Department of Conservation & Nat. Res., 859 So. 2d 1096, 1102 (Ala. 2002).

Consequently, in the absence of the payment of a filing fee or a hardship waiver, the circuit court did not acquire jurisdiction over the postjudgment contempt motion. See Colburn, 14 So. 3d at 178 ("[B]ecause the parties filed their motions after the entry of a final

judgment in the case, their motions constituted independent proceedings over which the trial court could gain jurisdiction only if the parties paid the filing fees required to commence such proceedings.").[2] Hence, all the actions taken by the circuit court in relation to Mock's contempt motion, including the entry of the February 3, 2025, judgment purporting to modify the custody of the child as a sanction for contempt[3] and to terminate Mock's child-support obligation, are void. See Vann v. Cook, 989 So. 2d 556, 559 (Ala. Civ. App. 2008).

### Modification Jurisdiction

Lastly, we note that, on June 14, 2024, more than 30 days after the entry of the March 15, 2024, judgment, which conclusively adjudicated Mock's modification petition in the .03 action, the circuit court purported to declare that that judgment was not final as to Mock's modification

---

[2]Mock suggests that Hall acquiesced to the circuit court's exercising continuing jurisdiction over the postjudgment contempt motion, but the record shows that Hall objected to that procedure. Moreover, even had Hall agreed to the procedure, subject-matter jurisdiction cannot be conferred by consent, see Tyson v. Jenkins, 183 So. 3d 182, 185 (Ala. Civ. App. 2015), or by estoppel, see Vann v. Cook, 989 So. 2d 556, 559 (Ala. Civ. App. 2008).

[3]We note that it is improper to modify the custody of a child as a sanction for contempt. See Ex parte Hale, 380 So. 3d 1084 (Ala. Civ. App. 2023) (plurality opinion).

petition. However, a judgment that is "final and appealable, will not be made nonfinal by the trial court's calling it nonfinal." Smith v. Fruehauf Corp., 580 So. 2d 570, 572 (Ala. 1991). Likewise, a trial court "'cannot, by its subsequent action, divest a decree of its character of finality. A final decree is not rendered interlocutory by the retention of the case on the docket, nor by the subsequent rendition of another decree therein.'" Nichols v. Ingram Plumbing, 710 So. 2d 454, 456 (Ala. Civ. App. 1998) (quoting Mingledorff v. Falkville Downtown Redev. Auth., 641 So. 2d 830, 832 (Ala. Civ. App. 1994), quoting in turn 30 C.J.S. Equity § 582 (1965)). Furthermore, to the extent that the circuit court's declaration could be considered an attempt to set aside the March 15, 2024, judgment denying Mock's modification petition, it was ineffective. "[A] trial court lacks jurisdiction to modify or vacate a judgment more than 30 days after the entry of the judgment, after any request for postjudgment relief has been denied, and when no motion seeking postjudgment relief under Rule 59 or Rule 60[, Ala. R. Civ. P.,] is pending." Ex parte DiGeronimo, 195 So. 3d at 968-69.

Once the circuit court denied Mock's modification petition on March 15, 2024, and after the lapse of 30 days during which no postjudgment

motion or other action was taken to set aside that denial, the circuit court could modify the custody of the child and terminate Mock's child-support obligation only based on a newly filed petition, accompanied with a filing fee or a hardship waiver.

In Ex parte Bragg, 237 So. 3d 235, 236 (Ala. Civ. App. 2017), Walter Alexander Roche, Jr., the father of children born of his relationship with their mother, Carrie Suzanne Bragg, filed a petition seeking to hold the mother in contempt and to modify the custody provisions of a prior judgment. In May 2016, the Chilton Circuit Court modified the visitation orders in the prior judgment, but it denied all other requests for relief. After all postjudgment motions were denied by operation of law, the guardian ad litem for the children filed a motion in the same proceeding requesting that the custody of the children be transferred to the father. The Chilton Circuit Court awarded the father pendente lite custody of the children and scheduled a hearing on the matter. The mother objected to the motion, to the pendente lite order, and to a hearing being held, asserting that "all matters in the father's modification action had been resolved upon the denial of the parties' postjudgment motions, no new filing fees had been paid, and no new custody-modification action had

been commenced." 237 So. 3d at 237. The Chilton Circuit Court overruled the mother's objection and entered an order awarding the father custody of the children and terminating his child-support obligation.

Upon review by petition for the writ of mandamus, this court determined that the May 2016 judgment was a final judgment, that the modification proceedings terminated once all postjudgment motions were denied, and that, "[a]ccordingly, the guardian ad litem's motion was, in essence, a new petition for modification of custody." 237 So. 3d at 238. This court said:

"In Farmer v. Farmer, 842 So. 2d 679, 680 (Ala. Civ. App. 2002), this court acknowledged that 'a petition to modify [custody] is a separate action that requires a proper filing, the payment of a filing fee, and service.' The court also stated that '[t]he failure to pay the filing or docketing fee is a jurisdictional defect.' Id. at 681. Relying on Farmer, the court in Vann v. Cook, 989 So. 2d 556 (Ala. Civ. App. 2008), held that a petitioner's failure to pay a filing fee in connection with the filing of a petition to modify custody deprived the trial court of jurisdiction. Similarly, in Odom v. Odom, 89 So. 3d 121 (Ala. Civ. App. 2011), the court held that a trial court lacked jurisdiction to modify the child-support provisions of a divorce judgment, because the petitioner had not paid the applicable filing fee and had not submitted a verified statement of substantial hardship seeking waiver of that fee. The soundness of the jurisdiction-related holdings in Farmer, Vann, and Odom has been questioned. See, e.g., Merriam v. Davidson, 184 So. 3d 411, 414 (Ala. Civ. App. 2015)

24

(Thompson, P.J., concurring in the result). As Presiding Judge Thompson acknowledged in Merriam, however, our supreme court has 'effectively endorsed' the substance of those holdings. Id."

Id. Because it was uncontested that no filing fee had been paid to commence a custody- or child-support-modification action, this court issued a writ of mandamus directing the Chilton Circuit Court to vacate its custody and child-support orders.

Like in Ex parte Bragg, in this case no new action was commenced, and no filing fee was paid or hardship waiver obtained to invoke the jurisdiction of the circuit court to modify the custody or child-support provisions of the 2019 judgment or the March 15, 2024, judgment. Thus, the circuit court lacked jurisdiction to enter the June 14, 2024, order, and the February 3, 2025, judgment, both of which are void.

## Conclusion

Based on the foregoing, we conclude that Hall has appealed from a void judgment. A void judgment will not support an appeal; thus, we conclude that the appeal must be dismissed, see Johnson v. Hetzel, 100 So. 3d 1056 (Ala. 2012), albeit with instructions to the circuit court to vacate the June 14, 2024, order, and the February 3, 2025, judgment. See Colburn, 14 So. 3d at 179.

25

APPEAL DISMISSED WITH INSTRUCTIONS.

Edwards, Hanson, and Fridy, JJ., concur.

Bowden, J., concurs in part and concurs in the result, with opinion.

BOWDEN, Judge, concurring in part and concurring in the result.

The main opinion concludes that the Geneva Circuit Court lacked jurisdiction to consider the postjudgment contempt motion filed by Laddin Cole Mock because Mock did not pay a filing fee. Paying a filing fee, however, does not affect a trial court's jurisdiction to act on a postjudgment contempt motion. A postjudgment contempt motion asks a trial court to enforce its final judgment, and, unlike its authority to modify a final judgment, a trial court's authority to enforce its final judgment is continuing, residual, and inherent, persisting after the entry of that judgment. Thus, paying a filing fee with a postjudgment contempt motion does not invest the trial court with jurisdiction to enter orders enforcing its final judgment; it already retains that inherent power.

Furthermore, our supreme court established three jurisdictional prerequisites that must be met before a trial court can exercise its contempt power. Those three prerequisites do not include the payment of a filing fee, and our supreme court has never held that the payment of a filing fee is required to imbue a trial court with jurisdiction to act on a postjudgment contempt motion. In fact, its recent decision in <u>City of Orange Beach v. Lamar Cos.</u>, 403 So. 3d 832 (Ala. 2024), indicates the

27

opposite, suggesting that this court should reexamine its precedent holding that the payment of a filing fee is a fourth jurisdictional prerequisite to a trial court's authority to act pursuant to a postjudgment contempt motion.

The main opinion attempts to distinguish City of Orange Beach from this case by focusing on the requested method of enforcement. The main opinion points out that, in City of Orange Beach, the City of Orange Beach filed a postjudgment motion to enforce a judgment via an injunction but that, in this case, Mock filed a motion to enforce the judgment via contempt sanctions. The main opinion implies that there is therefore a substantive difference between those two motions and, by extension, that there is a substantive difference between City of Orange Beach and this case.

The purported substantive difference identified by the main opinion appears to be the requirement to pay a filing fee. The main opinion states that a filing fee is required for a postjudgment contempt motion and states that "no authoritative legal opinion has ever held that the filing of

28

a motion for an injunction to enforce a final judgment initiates a new case requiring the payment of a filing fee." ___ So. 3d ___.[4]

The salient issue, however, is not whether a filing fee is required to be paid with a postjudgment contempt motion; the salient issue is whether paying a filing fee imbues a court with jurisdiction to enforce its judgment. There is little doubt that a postjudgment motion to enforce a judgment via injunction, which was at issue in City of Orange Beach, and a postjudgment motion to enforce a judgment via contempt, which is at issue in this case, are both motions that seek to enforce a judgment. And there is also little doubt that "'a trial court has residual jurisdiction to enforce its judgment.'" City of Orange Beach, 403 So. 3d at 840 (citation

---

[4]But see Alabama High Sch. Athletic Ass'n v. W.T.K. ex rel., [Ms. CL-2025-0743, Nov. 7, 2025] ___ So. 3d ___, (Ala. Civ. App. 2025)(holding that trial court lacked jurisdiction to consider postjudgment contempt motion seeking to enjoin the Alabama High School Athletic Association from imposing a sanction on W.T.K., because W.T.K did not pay a filing fee); see also Hicks v. Hicks, 130 So. 3d 184, 185 (Ala. Civ. App. 2012)(plurality opinion)(applying jurisdictional requirement to pay filing fee to "motion for contempt, sanctions, and specific performance" (emphasis added)); Stephens v. Nelson, 141 So. 3d 1073, 1080 (Ala. Civ. App. 2013) (Thomas, J., dissenting)("I conclude that the trial court's May 24, 2012, judgment was void because the new actions for contempt and an injunction should have been assigned a '.01' suffix by the trial court's clerk and would have required the payment of a new filing fee and new service of process pursuant to Rule 4, Ala. R. Civ. P. ").

omitted). Simply because <u>City of Orange Beach</u> concerned a motion to enforce a judgment via an injunction does not change the general, overarching principle applied to the facts of that case, <u>i.e.</u>, that the trial court has continuing, residual jurisdiction to enforce its judgment and, therefore, had jurisdiction to consider the City of Orange Beach's motion to enforce its judgment via an injunction. Logically, that same general principle applies with equal force to Mock's motion to enforce the circuit court's judgment via contempt in this case.

In fact, the main opinion's basis for distinguishing this case from <u>City of Orange Beach</u> -- <u>i.e.,</u> the relief requested in the postjudgment enforcement motion -- emphasizes the necessity to reexamine our precedent on this issue. At present, a trial court has jurisdiction to consider a postjudgment motion to enforce its judgment via injunction, regardless of whether a filing fee is paid, see <u>City of Orange Beach</u>, but it lacks jurisdiction to consider a postjudgment motion to enforce its judgment via contempt, unless a filing fee is paid. See <u>G.E.A. v. D.B.A.</u>, 920 So. 2d 1110 (Ala. Civ. App. 2005).

I do not dispute, however, that Mock was required to pay a filing fee under § 12-19-71(a)(7)a. Like the main opinion, I conclude that Mock's

30

postjudgment contempt motion is tantamount to a motion to enforce a domestic-relations judgment and that, therefore, he was required to pay the filing fee under that statute. I do dispute, however, that the payment of a filing fee under § 12-19-71 was a jurisdictional prerequisite to the circuit court's authority to act on Mock's motion, in light of its continuing, residual, and inherent authority to enforce its own judgment.[5]

I. <u>A trial court has continuing, residual jurisdiction to enforce its final judgment</u>

A trial court eventually loses jurisdiction to modify its final judgment, but it retains continuing, residual jurisdiction to enforce its

---

[5]I have not put forward the strawman argument that, in all cases, the failure to pay a filing fee is never a jurisdictional defect. I acknowledge that a filing fee is required to <u>reinvest</u> a trial court with jurisdiction to <u>modify</u> a final judgment and that the Alabama Supreme Court has held that paying a filing fee is a jurisdictional prerequisite in noncontempt cases. See note 6, <u>infra</u>. But those types of cases are not at issue here. As I demonstrate, <u>infra</u>, postjudgment contempt motions are unique because the trial court never loses its power to enforce its own judgment and, therefore, retains jurisdiction to consider motions filed to enforce that judgment. That conclusion is supported by <u>City of Orange Beach</u> and its precursors, beginning in 1941 with <u>Jones v. City of Opelika</u>, 242 Ala. 24, 4 So. 2d 509 (1941), as well as the line of precedent concerning contempt, beginning with <u>Easton v. State</u>, 39 Ala. 551, 552 (1865), which itself notes that "[a court's power to punish contempts] seems to be as ancient as courts themselves." When compared with the dates of the decisions in <u>Jones</u> and <u>Easton</u>, our 25 years of aberrant precedent on this issue does not appear quite so lengthy.

final judgment. § 12-1-7, Ala. Code 1975 ("Every court shall have <u>power</u>: … (3) To compel obedience to its <u>judgments</u>, orders and process …." (emphasis added)). Consistent with § 12-1-7, decisions of our supreme court and of this court have repeatedly recognized that a trial court's power to enforce its final judgment is an inherent power, one that continues beyond the time that the court loses jurisdiction to modify the final judgment. <u>Jones v. City of Opelika</u>, 242 Ala. 24, 27, 4 So. 2d 509, 512 (Ala. 1941)("The power of a court to enforce its valid orders and judgments is inherent, and it may take such legal steps as are necessary or expedient to render them binding and operative."); <u>Hall v. Hall</u>, 485 So. 2d 747, 749 (Ala. Civ. App. 1986)("It has long been recognized that a court has the inherent power to issue such orders or process as is necessary to enforce its judgments."); <u>Helms v. Helms' Kennels, Inc.</u>, 646 So. 2d 1342, 1347 (Ala. 1994)("[A] trial court does have residual jurisdiction or authority to take certain actions necessary to enforce or interpret a final judgment …."); <u>Ex parte Segrest</u>, 718 So. 2d 1, 6 (Ala. 1998)("To the extent there has been interference with a court's judicial proceeding, <u>that court has subject matter jurisdiction over that interference</u>." (emphasis added)); <u>State Pers. Bd. v. Akers</u>, 797 So. 2d 422,

424 (Ala. 2000)("A trial court has inherent authority to interpret, clarify, and enforce its own final judgments."); George v. Sims, 888 So. 2d 1224, 1227 (Ala. 2004); Stephens v. Nelson, 141 So. 3d 1073, 1077 (Ala. Civ. App. 2013)("The … judgment was a final judgment, but that judgment was also interlocutory in the sense that the trial court might need to clarify or enforce paragraph 8 of that judgment. Thus, the trial court in this case retained jurisdiction to consider the dispute between the parties regarding whether [the party] had properly complied with paragraph 8 of the … judgment."); Ex parte Caremark Rx, LLC, 229 So. 3d 751, 757 (Ala. 2017)("[A] trial court … continues to hold 'residual jurisdiction' even after [the] 30-day period [to file a postjudgment motion] expires such that it can still take any steps that are necessary to enforce its judgment." (emphasis added)); Rowland v. Tucker, 286 So. 3d 713, 724 (Ala. Civ. App. 2019)("We recognize that a trial court has 'residual jurisdiction' to 'take any steps that are necessary to enforce its judgment,' Ex parte Caremark Rx, LLC, 229 So. 3d 751, 757 (Ala. 2017)."); City of Orange Beach, supra.

Thus, although a trial court may eventually lose jurisdiction to modify its final judgment, it retains continuing, residual jurisdiction to

enforce its final judgment and to "take any steps that are necessary to enforce its [final] judgment." Ex parte Caremark, 229 So. 3d at 757.

> II. An action to hold a party in contempt is an action to enforce a final judgment

If a trial court has continuing, residual jurisdiction to take "any steps" that are necessary to enforce its final judgment, id., it necessarily retains jurisdiction to consider postjudgment contempt motions seeking to enforce its final judgment, because "the purpose of a contempt proceeding is to provide a court with a method for compelling compliance with its orders." AltaPointe Health Sys., Inc. v. Davis, 90 So. 3d 139, 155 (Ala. 2012)(emphasis omitted). Contempt proceedings are quintessential enforcement proceedings. See Easton v. State, 39 Ala. 551, 552 (1865)("The power to punish contempts by fine and imprisonment, is incident to all courts of justice; and without such power, the administration of the law would be in continual danger of being thwarted by the lawless. This power seems to be as ancient as courts themselves."); State ex rel. Payne v. Empire Life Ins. Co. of Am., 351 So. 2d 538, 542 (Ala. 1977)(noting, after discussing contempt, that "[b]oth statute and cases affirm the discretionary power of the court to enforce its orders and to punish recalcitrance."); Hall, 485 So. 2d at 749 ("It has long been

34

recognized that a court has the inherent power to issue such orders or process as is necessary to enforce its judgments. <u>As part of its inherent power, a court of record may punish for contemptuous failure to abide by its lawful orders. This contempt power may not be taken away or abridged, as it is essential to the due administration of justice.</u>" (emphasis added; internal citations omitted)); <u>Ex parte Cleburne Cnty. Bd. of Educ.</u>, 545 So. 2d 802, 804 (Ala. Civ. App. 1989)("The basic purpose of contempt proceedings is to secure prompt compliance to court orders and judgments."); <u>State ex rel. D.K. v. R.T.</u>, 599 So. 2d 627, 627 (Ala. Civ. App. 1992)("At the outset we note that a court has the <u>inherent</u> power to issue orders or process as are necessary to enforce its judgments. It may punish for the contemptuous failure to abide by its lawful orders, <u>and a contempt proceeding may be instituted by the court on its own motion</u>." (emphasis added; internal citation omitted)); <u>McMichael v. McMichael</u>, 71 So. 3d 678, 686 (Ala. Civ. App. 2011)("[The Talladega Circuit Court's] September 28, 2009, consent order was a lawful order and the Talladega Circuit Court had the inherent power to find Forney in contempt for violating that order."); <u>AltaPointe Health Sys.</u>, 90 So. 3d at 155 ("[R]egardless of whether a contempt in a civil case … is classified as

35

criminal or civil, <u>the purpose of a contempt proceeding is to provide a court with a method for compelling compliance with its orders</u> or the orders of another judge and to punish those who willfully disobey or resist any such orders." (emphasis altered)).

Thus, a postjudgment contempt motion filed because the alleged failure to comply with a final judgment is a motion that requests that the trial court exercise its inherent, continuing, and residual authority to enforce that final judgment.

III. <u>The jurisdictional prerequisites to entering a contempt judgment, as established by the Alabama Supreme Court</u>

According to the Alabama Supreme Court, there are three jurisdictional prerequisites that must be met before a trial court can exercise its contempt power: (1) the trial court must have jurisdiction over the underlying legal proceeding; (2) the trial court must have subject-matter jurisdiction over the matter alleged to constitute the contempt; and (3) the trial court must have jurisdiction over the person. <u>Ex parte Segrest</u>, 718 So. 2d at 6; <u>McCarthy v. McCarthy</u>, 785 So. 2d 1138, 1140 (Ala. Civ. App. 2000); see also <u>AltaPointe Health Sys.</u>, 90 So. 3d at 149-50 (Ala. 2012)(quoting <u>Ex parte Segrest</u>). The payment of a filing fee is not one of those requirements.

In this case, Mock filed a contempt motion alleging that Jessica Hall had not complied with the circuit court's final judgment. Under Ex parte Segrest, the circuit court had jurisdiction to consider Mock's postjudgment contempt motion because, "[t]o the extent that there has been interference with a court's judicial proceeding, that court has subject matter jurisdiction over that interference." 718 So. 2d at 6.

IV.    This court's addition of a fourth jurisdictional prerequisite: payment of a filing fee with a postjudgment contempt motion

Beginning with our decision in G.E.A. v. D.B.A., 920 So. 2d 1110 (Ala. Civ. App. 2005), however, this court added a fourth jurisdictional prerequisite that must be met before a trial court can exercise its contempt power to enforce a final judgment: the payment of a filing fee. See, e.g., Kaufman v. Kaufman, 934 So. 2d 1073 (Ala. Civ. App. 2005); Vann v. Cook, 989 So. 2d 556 (Ala. Civ. App. 2008); Colburn v. Colburn, 14 So. 3d 176 (Ala. Civ. App. 2009); Hicks v. Hicks, 130 So. 3d 184 (Ala. Civ. App. 2012)(plurality opinion), cert denied, Ex parte Hicks, 130 So. 3d 194 (Ala. 2013); Fox v. Arnold, 127 So. 3d 417 (Ala. Civ. App. 2012); Kyle v. Kyle, 128 So. 3d 766, 773 (Ala. Civ. App. 2013); Morgan v. Morgan, 183 So. 3d 945 (Ala. Civ. App. 2014), cert. quashed, Ex parte Morgan, 183 So. 3d 969 (Ala. 2015); Ex parte Kelley, 333 So. 3d 156 (Ala. Civ. App.

2021); Ex parte Standard Furniture Mfg. Co., 333 So. 3d 139 (Ala. Civ. App. 2021); Kornegay v. Kornegay, 369 So. 3d 1052 (Ala. Civ. App. 2022); J.N.M.-R. v. M.D.L.-C., 380 So. 3d 395 (Ala. Civ. App. 2022); Milton v. Delta Props., LLC, 403 So. 3d 160 (Ala. Civ. App. 2024); Alabama High Sch. Athletic Ass'n v. W.T.K. ex rel. M.L.K., [Ms. CL-2025-0743, Nov. 7, 2025] ___ So. 3d ___, (Ala. Civ. App. 2025).

Our supreme court has never endorsed the requirement, added by this court in G.E.A., that the payment of a filing fee is necessary for a trial court to obtain jurisdiction over a contempt proceeding.[6] Our supreme court did consider whether to grant a petition for the writ of certiorari in Ex parte Hicks, 130 So. 3d 194 (Ala. 2013), to review our decision in Hicks v. Hicks, 130 So. 3d 184 (Ala. Civ. App. 2012) (plurality

---

[6]The Alabama Supreme Court has found that the filing of a postjudgment contempt motion and the payment of a filing fee initiates an independent action. Ex parte SE Prop. Holdings, LLC, 353 So. 3d 533, 537 (Ala. 2021). But it did not hold in Ex parte SE Property Holdings that the payment of a filing fee is a jurisdictional requirement for a court to consider the allegations in a postjudgment contempt motion. I do not dispute that a filing fee is required to reinvest a trial court with jurisdiction to modify a final judgment and that the Alabama Supreme Court has held that a filing fee is a jurisdictional prerequisite in noncontempt cases. But the significant issue here is whether the Alabama Supreme Court has held that the payment of a filing fee is required to reinvest a trial court with jurisdiction to consider a postjudgment contempt motion. It has not.

opinion). In <u>Hicks</u>, this court held that the trial court's order was void for lack of jurisdiction because no filing fee had been paid when a petition for contempt was filed. The Alabama Supreme Court ultimately denied the petition for the writ of certiorari, but it did so with a "cracker," see generally <u>Ex parte Siebert</u>, 778 So. 2d 857 (Ala. 2000)(Johnstone, J., concurring specially)(concurring with the decision to deny the certiorari petition with a "cracker"); the Alabama Supreme Court noted that "[i]n denying the petition for the writ of certiorari, <u>[the Alabama Supreme Court] does not wish to be understood as approving all the language, reasons, or statements of law in the Court of Civil Appeals' opinion</u>." <u>Ex parte Hicks</u>, 130 So. 3d at 194 (emphasis added). Accordingly, the Alabama Supreme Court's denial of the petition for the writ of certiorari in <u>Ex parte Hicks</u> was not an implicit endorsement of this court's holding or reasoning in <u>Hicks</u>.

> V.  <u>The Alabama Supreme Court's decision in </u>City of Orange Beach v. Lamar Cos.<u>, 403 So. 3d 832 (Ala. 2024): reasserting the continuing, residual jurisdiction of the trial court to enforce its judgment</u>

Instead of endorsing this court's decisions holding that the payment of a filing fee is a jurisdictional prerequisite to a trial court's authority to

exercising its contempt power to enforce a final judgment, the Alabama Supreme Court implicitly rejected that approach in City of Orange Beach.

In City of Orange Beach, Lamar Companies ("Lamar") and the City of Orange Beach ("the city") entered into an agreement that was adopted into consent decrees entered in two underlying actions. The consent decrees were essentially identical and required Lamar to take down certain noncompliant billboards after a number of years; if Lamar did not, the Baldwin Circuit Court would, per the consent decrees, "'order the immediate removal of the nonconforming [billboard] with no further hearings.'" City of Orange Beach, 403 So. 3d at 836 (emphasis omitted).

The deadline passed to remove the billboards, and Lamar still had not taken them down. Anticipating that it would be sued by the city, Lamar filed a motion for an injunction in the Baldwin Circuit Court, in one of the underlying actions, without paying a filing fee. Similarly, the city filed a "Motion to Enforce Judgment and for Finding of Contempt," in both underlying actions.

> "In that motion, [the city] requested that the [Baldwin Circuit Court] order the removal of Billboard C pursuant to the consent decrees and sought a finding of civil contempt against Lamar and an award of attorney fees to [the city] as a sanction for Lamar's alleged violation of the consent decrees."

<u>City of Orange Beach</u>, 403 So. 3d at 838 (emphasis added). No new action was created with respect to the city's motion.

The Baldwin Circuit Court held a hearing and denied the city's "Motion to Enforce Judgment and for Finding of Contempt." The city appealed the order denying that motion. On appeal, the Alabama Supreme Court held that Lamar's motion seeking an injunction constituted a new claim and therefore required a new action and filing fee, stating:

> "Lamar's new claims <u>do not seek to enforce the consent decrees</u> but, rather, seek to challenge [the City's] current manner of enforcing the zoning ordinance. The assertion of such new claims requires the commencement of a new action ... <u>Lamar has neither commenced a new action nor paid a filing fee for such an action</u>. Therefore, the new claims asserted in Lamar's 'Motion to Enjoin' do not constitute a basis for refusing to enforce the terms of the consent decrees."

<u>City of Orange Beach</u>, 403 So. 3d at 842 (emphasis added).

With respect to the city's "Motion to Enforce Judgment and for Finding of Contempt," which was filed in the underlying actions and was directed to the consent decrees, the Alabama Supreme Court noted:

> "[T]he consent decrees were orders of the circuit court, and 'a trial court has residual jurisdiction to enforce its judgments.' <u>Gulf Beach Hotel, Inc. v. Gulf State Park Auth.</u>, 58 So. 3d 727, 730 (Ala. 2010). See also <u>Ingenuity Int'l, LLC [v. Smith]</u>, 386 So. 3d [450,] 455-56 (observing that a 'circuit court [has]

general authority to enforce settlement agreements. See Kappa Sigma Fraternity v. Price-Williams], 40 So. 3d [683,] 696 [(Ala. 2009),] (Murdock, J., concurring in rationale in part and concurring in result) ("[A] trial court exercises inherent power to [enforce a settlement agreement] based on the fact that the agreement has been made before the court.").'); Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 381, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (concluding that a federal district court lacked ancillary jurisdiction to address the claims at issue, but noting that '[t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal ... by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.')."

City of Orange Beach, 403 So. 3d at 840-41. "[I]t is the duty of an appellate court to consider lack of subject matter jurisdiction ex mero motu." Ex parte Smith, 438 So. 2d 766, 768 (Ala. 1983). The Alabama Supreme Court therefore considered the issue whether the trial court in City of Orange Beach had jurisdiction to consider the "Motion to Enforce Judgment and for Finding of Contempt," and, although clearly aware that the city had filed that motion in the underlying actions -- and not in a new action -- the Alabama Supreme Court did not hold that the Baldwin Circuit Court lacked jurisdiction over the city's "Motion to Enforce Judgment and for Finding of Contempt," as it had done with Lamar's motion seeking an injunction. Instead, the Alabama Supreme Court cited

the trial court's continuing, residual jurisdiction to enforce its judgment and ultimately concluded that the trial court had erred by refusing to enforce the terms of the consent decrees.

City of Orange Beach, when considered alongside the long line of cases from the Alabama Supreme Court and this court concerning a trial court's continuing, residual jurisdiction to enforce its judgment, casts considerable doubt on the continuing soundness of G.E.A. and its progeny. On the one hand, a trial court has continuing, residual jurisdiction to enforce its judgments, and, the Alabama Supreme Court has reasoned, it therefore has jurisdiction to consider a postjudgment motion seeking to enforce a final judgment that has been filed in the same action as the final judgment. On the other hand, this court has held that a postjudgment contempt motion that seeks to enforce a final judgment may not be filed in the same action as the final judgment, and requires the payment of a filing fee, and that the failure to pay that fee is a jurisdictional defect.

Admittedly, in City of Orange Beach, the Alabama Supreme Court did not expressly hold that the trial court had jurisdiction to consider the city's motion to the extent that it was a "Motion … for Finding of

Contempt." But to distinguish City of Orange Beach from G.E.A. and its progeny in such a way would lead to an absurdity. It would amount to holding that a trial court has jurisdiction to consider a postjudgment motion to "enforce" a judgment in an underlying action but that it lacks jurisdiction to actually use its contempt power -- the quintessential enforcement power -- to enforce the judgment. Yet, as even this court has noted, "[a]ll courts have inherent authority to punish for contempt in the interest of protecting their dignity and demanding obedience to their decree." Parcus v. Parcus, 615 So. 2d 75, 77 (Ala. Civ. App. 1992)(emphasis added). And, as indicated by City of Orange Beach, a trial court has continuing, residual jurisdiction to enforce its final judgment, including the inherent authority to wield the contempt power to punish for noncompliance with that judgment. See Ex parte Segrest, 778 So. 2d at 6 ("To the extent there has been interference with a court's judicial proceeding, that court has subject matter jurisdiction over that interference." (emphasis added)). If a trial court "continues to hold 'residual jurisdiction' ... such that it can still take any steps that are necessary to enforce its judgment," Ex parte Caremark, 229 So. 3d at 757

(emphasis added), "any steps" to enforce its judgment must include the power to hold a party in contempt.

"The decisions of the Supreme Court … govern the holdings and decisions of the courts of appeals." § 12-3-16, Ala. Code 1975. In light of City of Orange Beach, as well as the power given to a trial court to enforce its judgment by § 12-1-7, and the long and continued chain of precedent from this court and the Alabama Supreme Court recognizing that a trial court has continuing, residual jurisdiction to enforce its judgments, G.E.A. and its progeny are likely unsound to the extent that those cases hold that the failure to pay a filing fee to initiate a postjudgment contempt proceeding is a jurisdictional defect. Paying a filing fee when filing a postjudgment contempt motion cannot reinvest the trial court with jurisdiction to enforce its judgment when it already retains that inherent power.

I do not dispute that § 12-19-71(a)(7)a. requires a filing fee to be paid for cases seeking to "enforce an existing domestic relations order." And I therefore do not dispute that Mock was required to pay a filing fee when he filed his postjudgment contempt motion. But the payment of a filing fee for a postjudgment contempt motion is not a jurisdictional

45

prerequisite that, if not met, prohibits a trial court from exercising its continuing, residual jurisdiction to enforce a judgment using its contempt power. Instead, nonpayment of the required filing fee for a postjudgment contempt proceeding should result in a stay of that proceeding until the filing fee is paid, similar to the treatment of the nonpayment of filing fees for counterclaims that seek an order holding a party in contempt. See e.g., Hudson v. Hudson, 178 So. 3d 861 (Ala. Civ. App. 2014)("A trial court may, in its discretion, stay any proceedings on a counterclaim in order to ensure payment of the filing fee, and a counterclaim defendant may move the trial court to do so. However, a trial court does not act without jurisdiction if it fails to take such steps before adjudicating a counterclaim, even upon a motion of a counterclaim defendant"); Landry v. Landry, 182 So. 3d 553, 555 (Ala. Civ. App. 2014).

## Conclusion

At present, a trial court has jurisdiction to consider a postjudgment motion to enforce its judgment via an injunction, regardless of whether a filing fee is paid, see City of Orange Beach, but it lacks jurisdiction to consider a postjudgment contempt motion, unless a filing fee is paid. See G.E.A., supra. There is no relevant difference, however, between a

46

postjudgment motion to enforce a judgment via contempt and a postjudgment motion to enforce a judgment via an injunction. Mock was not required to pay a filing fee to invest the circuit court with the jurisdiction to take enforcement actions when the circuit court never lost jurisdiction to enter orders to enforce its judgment in the first place. Therefore, I respectfully concur in the result as to the section of the opinion titled "The Filing-Fee Requirements." I concur in the remaining sections of the opinion.